A. What is Mr. Garrahan's teaching that you're postulating?

Q. Use of a long filter band that extends out—out of my extruder pad or my screen changer body.

A. All right.

Q. Would that be a fair combination of the teachings of Garrahan and Moziek?

A. Well, yes, I'd say so. This is a slide changer, and that's a slide changer. Why not use this instead of that.

In other words, KC's argument is that it would have been obvious within the meaning of 35 U.S.C. § 103 to open the valves of the Moziek device, leave them open, and combine it with the so-called "long filter band," which is not very long, that extends through Garrahan to arrive at Kalman's claimed devices and processes. With respect to the sealing plug claim limitations, KC suggests that the prior art "indicates that the level of ordinary skill in this art clearly recognized the formation of seals by chilling of a hot thermoplastic."

We cannot agree, however, that this is sufficient to defeat Kalman's claims. KC's arguments are directed to various hypothetical combinations of prior art features and amount to nothing more than hindsight reconstructions. They fail to focus on other evidence respecting the nonobviousness of Kalman's claimed invention.

The district court found, based upon testimony given at trial, that several long-standing problems were solved by Kalman. At that time, the court concluded, "those persons of ordinary skill simply did not see a solution to the problems inherent in filtering plastics." Although KC responds that "None of these elements form a part of the claimed Kalman invention," it has not established that these advantageous results are not attributes of (i.e., that they have no nexus to) the claimed invention, which resides in a *combination* of steps or elements. Accordingly, we hold none of the findings of the district court to be clearly erroneous. Its decision holding that the claims in suit have been infringed by KC and that KC has failed to sustain its burden to show them invalid is *affirmed.*

AFFIRMED.

**CHORE–TIME EQUIPMENT, INC., Appellant,**

v.

**CUMBERLAND CORPORATION, Appellee.**

**Appeal Nos. 83–518, 83–598.**

United States Court of Appeals, Federal Circuit.

July 13, 1983.

Kevin E. Joyce and Kendrew H. Colton, Washington, D.C., of counsel.

David A. Dyrus, Chattanooga, Tenn., of counsel.

Before MARKEY, Chief Judge, and NICHOLS and SMITH, Circuit Judges.

MARKEY, Chief Judge.

Chore-Time Equipment, Inc., (Chore-Time) appeals from a judgment of the United States District Court for the Eastern District of Tennessee (Wilson, J.) holding Chore-Time's U.S. Patent No. 3,911,868 (the Brembeck patent), issued October 14, 1975, for a "Poultry Feeder", invalid and awarding summary judgment to Cumberland Corporation (Cumberland). Chore-Time also appeals an award of costs to Cumberland. We affirm.

## BACKGROUND

On May 23, 1980, Chore-Time sued Cumberland for infringement of claims 1, 2 and 7 through 11 of the Brembeck patent. Cumberland denied infringement and moved for summary judgment, asserting patent invalidity in view of certain prior art patents and the deposition testimony of Howard S. Brembeck (Brembeck), President of Chore-Time and patentee of the Brembeck patent.

The court granted the motion on September 14, 1982, holding in effect that: the subject matter of claims 1, 7 and 9 would have been obvious under 35 U.S.C. § 103 in view of U.S. Patent No. 3,490,419 (Van Huis '419); that the subject matter of claims 1, 7 and 11 was anticipated under 35 U.S.C. § 102 by Van Huis '419; and that the subject matter of claims 1, 2, 8 and 10 would have been obvious under 35 U.S.C. § 103 in view of Van Huis '419 and U.S. Patent Nos. 3,388,690 (Hostetter), 3,566,843 (Van Huis '843), and 3,511,215 (Myers).

Cumberland, in its Bill of Costs, requested reimbursement of $3,077.29 for hearing and deposition transcripts, copying of documents and exhibits, translation, computer

---

Richard Bushnell, Chicago, Ill., argued for appellant. With him on brief was Todd S. Parkhurst, Chicago, Ill.

Edgar H. Martin, Washington, D.C., argued for appellee. With him on brief were

time, and enlargement of exhibits. In a November 19, 1982 order, the court awarded $2,932.32 in costs for all but computer time and exhibit enlargement.

## THE BREMBECK PATENT

The Brembeck patent discloses and claims a feeder pan assembly for automated poultry feeding:

The feeder of the Brembeck patent includes:

1. a hood consisting of:
   (a) a shell member 24 and
   (b) a storage pipe 23
2. a pan 21
3. a wire interconnector 45 suspending the pan from the hood.

Feed is delivered by an auger conveyor to the pipes 23 of a series of individual feeder pan assemblies. The terminal edges of pipe 23 and shell 24 form respectively with the conically-shaped bottom 33 of pan 21 two gates functioning as feed flow regulators (claim 1).[1]

Gate 34 controls feed flowing into the hood to provide limited storage of feed, and gate 39 controls flow into the feeding area (Claims 7 and 11).

Shell 24 is sloped "to prevent birds from resting thereon" and is positioned "more proximate with respect to the pan side than

[1] 1. A feeder for poultry and the like including hood means, pan means having an undercut lip portion, and interconnector means for suspending the pan means from the hood means, the hood means including a storage pipe member terminating at an edge above the pan member to form a first gate through which feed can pass, and a shell member terminating at an edge above the pan to form a second gate through which feed can pass, the shell member and pan together forming an annular feeding area of extended periphery and sufficient width to permit the poultry to obtain feed from the feeder, but insufficiently wide to permit the poultry to climb bodily into the feeder, the interconnector means including a plurality of strut members, each member engaging the pan undercut lip portion and extending generally downwardly and inwardly therefrom across the interior contours of the pan and thence upwardly along the outer contours of the shell member, a shell engagement member affixed to each strut member for securing the strut and pan to pre-determined point of the shell member, the interconnection means thereby providing unobstructed access to the feeding area for the poultry.

to the apex of the pan conical portion ... to prevent feeding poultry from climbing bodily into the feeder" (Claims 7, 9).

Rib and strut members connect shell 24 and pipe 23 with pan 21 (Claims 1, 2, 8 and 10).

In attempting to distinguish over the prior art in the Patent and Trademark Office (PTO), at trial, and before this court, Chore-Time repeatedly emphasized the two-gate configuration and the limited space between shell and pan.

## THE REFERENCES

Van Huis '419 discloses a feeder pan assembly for automated poultry feeding:

FIG. 2.

The feeder of Van Huis '419 includes:
1. a hood consisting of:
   (a) a shell member 28 and
   (b) a storage pipe 40
2. a pan 26
3. wire interconnectors (not shown) suspending the pan from the hood.

In the Van Huis '419 feeder, the terminal edges of pipe 40 and shell 28 form respectively with the conically-shaped bottom of pan 26 two gates functioning as feed regulators.

Myers discloses a feeder pan assembly for automated poultry feeding:

Fig. 2.

The Myers feeder includes:

1. a shell member 38
2. a pan 102
3. wire interconnectors 104 for suspending the pan from the hood.

Hostetter and Van Huis '843 disclose feeder pan assemblies including, as does Myers, struts connecting the hood with the feeder pan.

## ISSUES

Whether the district court erred in (1) granting summary judgment, or (2) awarding costs.

## OPINION

I.  *Summary Judgment*

A.  *Propriety of Summary Judgment:*

Chore-Time says there are genuine issues of material fact respecting the scope and content of the prior art, the level of skill in the art, and the commercial success of the Brembeck patented device, citing *Graham v. John Deere,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

Though we approach the question, as we must, prepared to resolve all doubt respecting the presence or absence of material issues of fact in Chore-Time's favor, we discern no basis for doubting the absence of any such issue here. The mere incantation of the fact findings listed in *Graham* cannot establish the impropriety of issuing a summary judgment when there is no material issue of fact requiring a trial to resolve, and the facts of record require a holding of patent invalidity. Many, if not most, suits for patent infringement give rise to numerous and complex fact issues, rendering those suits inappropriate for summary disposition. Where no issue of material fact is

present, however, courts should not hesitate to avoid an unnecessary trial by proceeding under Fed.R.Civ.P. 56 without regard to the particular type of suit involved.

It is undisputed that the district court had before it all of the relevant prior patented art. The subject matter, *i.e.*, the scope and content, of those patents being easily discernible from their drawings and written descriptions, no testimony, expert or otherwise, regarding their scope and content was necessary.

Chore-Time's assertions concerning a genuine issue of material fact regarding the disclosures of the prior art are unconvincing in light not only of that prior art itself, but also in light of Brembeck's admissions respecting the precise features on which Chore-Time relies.

Brembeck admitted that Van Huis discloses two gates functioning as feed regulators:

Q. Now referring to the Van Huis ['419] patent, are there two gates disclosed in that patent?

A. I think there are.

. . . . .

Q. But there is a common denominator, is there not, that Mr. Van Huis discloses the use of first and second regulators and you disclose the use of first and second regulators?

A. Yes, I think so. It shows there. That's what he's trying to do, evidently.

Brembeck also admitted that the upper conical portion of Myers' shell was intended to keep birds from resting thereon, that the Myers shell was spaced closer to the edge than to the apex of the pan, and that it would be uncomfortable for birds to stand in the Myers pan.

The affidavit of Chore-Time employee Rigterink, contradicting Brembeck's admission, creates no genuine issue of fact, for it is wholly conclusory and its conclusions are contrary to the clear disclosure of the drawings and written description found in the Van Huis '419 patent. *Cf. International Harvester Co. v. Deere & Co.*, 478 F.Supp. 411, 416 (D.Ill.1979) *vacated on jurisdictional grounds*, 623 F.2d 1207 (7th Cir.1980) (no legitimate issue created by affidavits contradicting admissions of the patent owner and inventors).

■ Similarly, there is no genuine issue respecting the level of skill in the art. Chore-Time has not shown error in Judge Wilson's determination that because the subject matter of the patent and the prior art were in this case so easily understandable, a factual determination of the level of skill in the art was unnecessary. *See Schutt Manufacturing Co. v. Riddell*, 673 F.2d 202, 205 (7th Cir.1982); *Monaplastics, Inc. v. Caldor, Inc.*, 378 F.2d 20, 21 (2d Cir.1967).[2]

Chore-Time, does not, as it cannot, argue that an unnecessary fact is material. It makes only a naked allegation that some unspecified higher level of skill should have been applied. That allegation is insufficient to create a fact issue material to the outcome of this case and cannot, here, defeat a motion for summary judgment.

Nor is there a genuine issue of fact concerning commercial success. Brembeck and Marttila (Chore-Time's Vice President) admitted that the feeder pan assembly of the Brembeck patent was never marketed.

**2.** That is not to say that simplicity of the invention, or its ready understandability by a judge, constitute evidence of obviousness. We hold only that an invention may be held to have been either obvious (or nonobvious) without a specific finding of a particular level of skill or the reception of expert testimony on the level of skill where, as here, the prior art itself reflects an appropriate level and a need for such expert testimony has not been shown.

Though Judge Wilson noted that obvious-to-the-court was not the appropriate measure, he postulated a level of skill as that of the "ordinary layman of average intelligence." Though Chore-Time disputes that that level was most favorable to it, saying "a layman would [not] recognize that birds roosting on feeders, or birds climbing into feeder pan, would be problems in need of solutions", it has not shown that a higher level could affect the result. We need not determine the appropriateness of the postulated level in this case.

Chore-Time's commercial product was based on its Swartzendruber Patent No. 4,070,990 and did not incorporate the invention claimed in the Brembeck patent. The success of Chore-Time's commercial product is irrelevant in determining the validity of the Brembeck patent claims in suit and, accordingly, raises no material issue of fact.

### B. *Correctness of Summary Judgment:*

Judge Wilson discussed individual elements in the claims, comparing them to corresponding elements in prior art structures, apparently in response to Chore-Time's assertions of nonobviousness of those elements. Claims should be considered as a whole. We follow here the path of discussion as presented, however, for consideration of the claims as a whole would not in this case affect the outcome.

### (1) Claims 1, 7, and 9

Chore-Time's effort to show error in the judgment respecting claims 1, 7, and 9, centers on the design of the pan and shell to discourage birds from roosting on or in the device. That effort must fail.[3]

Brembeck, in his deposition testimony, admitted that the sloping hood of Myers was intended to perform the same anti-roosting function and that the periphery of the Myers' shell is closer to the edge than to the apex of the feed pan as set forth in Brembeck's claims 1, 7, and 9:

Q. I believe you further said this morning that the shape of the dome or shell shown in Exhibit 6 [Myers patent] was intended to keep birds from roosting on the shell. Is that correct?

A. Yes.

. . . .

Q. And the shell [of Myers] has a cylindrical bottom portion. Do you see what I'm referring to, as opposed to the conical top portion?

A. Yes.

Q. Now, sir, is that—is the periphery of that cylindrical portion closer to the edge of the feed pan or to the apex of the conical portion of the feed pan?

A. Well, it would appear here (indicating) that it is a little closer to the edge of the feed pan. But I—on this drawing anyway.

### (2) Claims 1, 7, and 11

Chore-Time says claims 1, 7, and 11 were not anticipated by Van Huis '419 because Van Huis does not disclose a two-gate feed controlling structure. The argument is groundless. That Van Huis '419 discloses a two-gate structure substantially identical to that set forth in claims 1, 7, and 11 is apparent from its drawings and written description.[4]

Chore-Time suggests that the anticipation holding should be overturned because a patent must be presumed valid, 35 U.S.C. § 282, particularly where, as here, the Patent and Trademark Office investigated class/subclass 119/53 where Van Huis '419 is classified. The argument is unavailing. The presumption is, like all presumptions in law, a starting place and a procedural device assigning the burden of proof. To treat the presumption as irrebuttable would be to oust the courts of their jurisdiction to consider a challenge to the validity of patents before them. See *Medical Laboratory Automation v. Labcon, Inc.,* 670 F.2d 671, 674 (7th Cir.1981). ("Even where the examiner considers all the relevant prior art . . . [if] it is clear to the court that the . . . [claimed invention would have been] obvi-

---

**3.** In holding invalid the "claim" that birds cannot rest on or in the assembly, Judge Wilson said: "It is within the ken of the ordinary layman that birds do not rest upon vertical walls nor can they fit into an opening too narrow for them." That approach is infected with a touch of hindsight and tends not to focus on the invention as a whole. Its appropriateness or inappropriateness is of no moment here, however, in light of the prior art and Brembeck's deposition.

**4.** Brembeck's testimony admitting that Van Huis '419 discloses a two-gate structure is quoted in Part A above.

ous in the light of that prior art, it will hold the . . . [claims] invalid").

### (3) Claims 1, 2, 8, and 10

Struts are described in claims 1 and 2 as located along the bottom of the pan to provide free access to the feeding area. Rib members extending between the storage pipe and shell to add rigidity to the hood are set forth in claim 8. The hood, pipe and ribs are described as formed of a single piece of plastic in claim 10.

Chore-Time does not dispute the correctness of the court's holding with respect to these claims, beyond restating its argument that a wrong level of skill was applied. That argument is unpersuasive.

### (4) Synergism

In the course of his opinion, Judge Wilson said:

> There is no synergistic result from the combination of elements, a result which is more than the sum of the pre-existing elements.

■ In determining patentability, we are guided, as we must be guided, by the statute. A requirement that an invention reflect "synergism" or achieve a "synergistic result," before it may be held patentable appears nowhere in the statute, 35 U.S.C. The test of obviousness under 35 U.S.C. § 103, as the statute makes plain, is whether the invention as a whole would have been obvious at the time it was made to one of ordinary skill in the art. References to

synergism as a patentability requirement are, therefore, unnecessary and confusing.

■ We sit, however, to review judgments, not opinions. The reference to "synergism" here is insufficient to require reversal of the judgment, for Judge Wilson did not rest his invalidity holding thereon. It is clear that he decided the obviousness issue in light of the prior art. The gratuitous reference to "synergism" did not here detract from the determination of obviousness made in accord with accepted standards. See Bowser, Inc. v. United States, 388 F.2d 346, 156 USPQ 406 (Ct.Cl.1967).[5]

### II. Costs

■ Chore-Time says the district court had no jurisdiction to tax costs because the notice of appeal had been filed, transferring jurisdiction to this court, and because it was an abuse of discretion to award costs for transcript, translation, copying of documents and exhibits and depositions not "necessarily obtained for use in the case." 28 U.S.C. § 1920.[6]

The court had jurisdiction to award costs. Taxation of costs has been recognized as a non-substantial "ministerial function" which may be completed after notice of appeal has been filed. See Swalley v. Addressograph-Multigraph Corp., 168 F.2d 585, 587 (7th Cir.1948).

Nor was there here an abuse of discretion. Under 28 U.S.C. § 1920(2), "fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case" are recoverable. That

---

**5.** In affirming the judgment here, we do not, of course, thereby adopt as our own, the opinion, or any particular portion of the opinion, that accompanied the judgment appealed from. Nor is it necessary that we indicate disagreement with each expression considered erroneous in an opinion when, as here, such expressions did not affect the outcome necessitated by the facts and the law.

**6.** That section provides in pertinent part:
A judge or clerk of any court of the United States may tax as costs the following:
(1) Fees of the clerk and marshal;
(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title [28 USCS § 1828].
A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

782

section includes the costs of transcripts of pre-trial and post-trial hearings, as well as transcripts of the trial itself. There is no basis for Chore-Time's effort to distinguish a transcript of oral argument on a motion for summary judgment from that of a trial.

Nor is there a basis for overturning the court's finding that the transcript was necessarily obtained for use in the case. *See, e.g., Sperry Rand Corp. v. A–T–O,* 58 F.R.D. 132 (E.D.Va.1973); *Kaiser Industries v. McLouth Steel Corp.,* 50 F.R.D. 5 (E.D. Mich.1970).

The award of costs for translation of a German patent found "relevant to [Cumberland's] contentions" was appropriate under 28 U.S.C. § 1920(6).

Award of copying costs was similarly appropriate under § 1920(4) and did not constitute an abuse of discretion.

Chore-Time's assertions that the depositions were not necessarily obtained for use in the case and were not referred to in the court's opinion are unavailing. The court found that the depositions "were reasonably necessary to discover possible avenues of attack upon . . . [Chore-Time's] patent" and observed that Chore-Time "indicates no particular depositions which were not necessary in light of its claims." That a deposition was not referred to in the court's opinion is immaterial. *See Wahl v. Carrier Mfg. Co.,* 511 F.2d 209 (7th Cir.1975) (charges for transcripts of depositions reasonably necessary for use in case, even though not used at trial, are recoverable as costs under 28 U.S.C. § 1920).

CONCLUSION

The grant of summary judgment and award of costs to Cumberland are affirmed.

AFFIRMED.