AID PACK, INC., Plaintiff,

v.

BEECHAM, INC., Ann & Hope, Inc., and Omnilab Inc., Defendants.

Civ. A. No. 85–1785–MA.

United States District Court, D. Massachusetts.

Aug. 18, 1986.

David Wolf, Esquire and Edward F. Perlmen, Wolf, Greenfield & Sacks, Boston, Mass., for plaintiff.

Edward T. Robinson, Gaston Snow and Ely Bartlett, James F. O'Brien, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

The plaintiff, Aid Pack, Inc., has filed a complaint under 35 U.S.C. §§ 271 et seq. for infringement of United States Letter Patent Number 4,068,663 (the '663 patent), which it owns and which covers a "container particularly adapted for use as a disposable douche" invented by Alfred C. D'Alessandro. The complaint alleges that the defendant Beecham, Inc., is infringing the '663 patent by selling to the defend-

ants, Ann & Hope, Inc., Rix Corporation, and others, a disposable douche product under the mark Massengill.[1] Beecham has moved for summary judgment on the ground that the bottles and nozzle it uses for its disposable douche product are not encompassed within the scope of the disclosure and claims of the '663 patent. Aid Pack has opposed this motion and both sides have filed extensive memoranda, affidavits, and exhibits.

## I.

In order to grant summary judgment a court must find that there are no genuine issues of material fact and that a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In deciding whether summary judgment is appropriate, a court is guided by a single set of principles; the rules do not change simply because the case involves patent law. *D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570, 1573 (Fed.Cir. 1985). Although most suits involving patent infringement contain "numerous and complex factual issues" that make summary judgment an inappropriate method of resolution, some lend themselves to summary disposition. *Chore-Time Eqpt., Inc. v. Cumberland Corp.*, 713 F.2d 774, 778–79 (Fed.Cir.1983). Whether a patent dispute can properly be resolved on motion for summary judgment depends on whether the parties disagree on factual or legal issues. What follows is an outline of the decisional framework for a patent dispute and an analysis of the nature of the parties' dispute in this case.

A "leading case" on patent infringement, *Autogiro Co. v. United States*, 384 F.2d 391, 395–401, 181 Ct.Cl. 55 (1967), sets forth the steps necessary for resolution of a patent infringement case: (1) determine the meaning of the claims in the patent; and (2) read the claims on the ac-

cused structure, which involves determining first whether the accused structure literally infringes the claims and second, if it does not, applying the doctrine of equivalence to determine whether the accused structure performs substantially the same function in substantially the same way for substantially the same purpose. The doctrine of equivalence is "subservient" to "file wrapper estoppel" or "prosecution history estoppel," a doctrine that "precludes a patent owner from obtaining a claim construction that would resurrect subject-matter surrendered during prosecution of his patent application." *Hughes Aircraft Co. v. United States*, 717 F.2d 1351, 1362 (Fed. Cir.1983). Step one, claim interpretation or construction, is said to be a legal issue; step two, infringement, a factual one. *Martin v. Barber*, 755 F.2d 1564, 1566–67 (Fed.Cir.1985). Even though claim interpretation is a legal issue, if the meaning of a term of art in the claim is disputed and extrinsic evidence is needed, summary judgment is not appropriate. *McGill Inc. v. John Zink Co.*, 736 F.2d 666, 671–72 (Fed.Cir.), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 514, 83 L.Ed.2d 404 (1984). Conversely, even though infringement is a factual issue, summary judgment can be warranted when the factual issues underlying infringement are not disputed, and all that remains is to apply the claims to the accused device. *Martin*, 755 F.2d at 1567. The factual issues underlying infringement are not disputed when the parties do not dispute the construction of either the patented or the accused devices. *Builders Concrete v. Bremerton Concrete Products*, 757 F.2d 255, 257 (Fed.Cir.1985). Usually, when the issue of infringement depends on the doctrine of equivalence, summary judgment is inappropriate because of the factual nature of the inquiry. However, the patent owner's simple invoca-

---

1. The complaint alleges further that Ann & Hope is infringing the '663 patent by selling the Beecham product and another disposable douche made by Purdue Frederick Company, and Rix is infringing the '663 patent by selling the Beecham product and another disposable douche made by S/P Industries, Inc. Rix filed third-party complaints against S/P Industries and its successor corporation, S.A.Y. Industries, Inc., seeking indemnification. By stipulation, Omnilab Inc. (formerly known as S/P Industries, Inc.) intervened as a defendant in exchange for which all claims involving Rix were dismissed without prejudice.

tion of the doctrine of equivalence is not sufficient to preclude summary judgment. The patent owner's reliance on that doctrine may be limited by prosecution history estoppel, "an equitable tool for determining the permissible scope of patent claims." *Id.* at 258.

Thus, in order to determine whether summary judgment is warranted in this case, it will be necessary to examine carefully the positions of the parties. In doing so, the facts will be viewed in the light most favorable to the plaintiff, and the plaintiff will be indulged all inferences. *Thyssen Plastik Anger KG v. Induplas, Inc.,* 576 F.2d 400, 401 (1st Cir.1978). The facts of the case are set out below.

## II.

Patent '663 was obtained on January 17, 1978, pursuant to application number 649,-330 filed on January 15, 1976. It was a continuation of application number 408,299 filed on October 23, 1973 and subsequently abandoned. The file wrapper shows that the patent was finally obtained after repeated rejections by the examiner on grounds of obviousness in light of earlier patents.

Patent '663 is for a "single-use disposable squeeze bottle and nozzle, particularly adapted for use as a disposable douche." It was intended as an improvement over commercially available douches which were made of several components (bottle, cover, and nozzle to be secured to the bottle when the cover was removed) and which required careful assembly by the user "in order to avoid inadvertent leakage which [occurred] if the nozzle [was] not securely screwed by the collar of the bottle. Such leakage [could] readily occur as a result of careless assembly or loosening during use." These units were also undesirable because their many components were expensive to manufacture and it was difficult for the user to maintain sterile conditions, if needed. The patent was to provide a "syringe-like dispenser" formed in a "blow-molding" machine (i.e., a machine invented in the 1960s by Gerhard Hansen which in one step, blew a plastic bottle, filled it with liquid, and

sealed it with a plastic top that could be torn off by the user to create an opening) with an "interlocking nozzle." The seal between the nozzle and bottle was to be an improvement over the prior art in that it was formed by a ring on the inside of the nozzle which came in contact with the dome close to the opening in the dome. Because the dome was flexible, as the bottle was squeezed and liquid was forced from the bottle through the small opening in the dome into the nozzle, the dome would flex into the nozzle creating an even better seal.

Following is a drawing of figure 3 from the patent which illustrates in a cross-cut view how the nozzle snaps onto the bottle and forms a seal.

*FIG. 3*

The drawing shows the bottle after the "key" is torn off by the user and the nozzle is snapped on. The top of the cover of the bottle 16 is dome-like and tapers from a

comparatively thick wall at its base 23 to a relatively thin wall 22 at the bottle opening 21. The top surface of the dome 16 is easily deformed because of this tapered construction and because of the cantilevered support provided at wall 23. A seal is formed when the nozzle is snapped onto the bottle because the cantilevered dome engages the ring inside the nozzle 36 under slight tension. The seal improves when the product is in use because the user squeezes the bottle, forcing the liquid through the relatively small hole in the dome and flexing the dome with greater pressure against the ring 36.

Following is a drawing of the Beecham disposable douche bottle with the key torn off and nozzle attached.

The sketch shows that the nozzle is screwed on rather than snapped on. The bottle has a similar dome-like top. However, its nozzle has a descending ring A which makes contact with the bottle very near the bottle's edge and which forms the seal. The seal is formed by securely screwing the nozzle onto the bottle and is not affected by the user squeezing the bottle because the ring contacts the bottle above the wall of the bottle which is relatively stable. It does not make contact with the bottle on a flexible portion of the dome.

What is in issue in this case is the particular design for the top of the bottle and the nozzle. D'Alessandro does not (nor could he) claim to have invented the disposable douche[2] or the blow/fill/seal bottle.[3]

---

**2.** McKenna obtained a patent for a two-piece disposable douche with a flexible container and screw-on nozzle in 1962 (Robinson affidavit, exh. 12).

**3.** Hansen obtained a patent on the blow/fill/seal machine in 1967 and Witchell obtained a patent on a disposable plastic bottle with an integrally formed twist-off cap in 1967 (Robinson affidavit, exhs. 13 and 24).

D'Alessandro obtained his patent in 1978. Beecham began selling douche products in 1971 when it acquired the S.E. Massengill Company. At that time, its product consisted of a powder or concentrated liquid which the user would mix with water and pour into a reusable applicator owned by the user. In approximately 1974 Beecham decided to introduce a disposable douche product on the market in order to compete with one the C.B. Fleet Company had begun selling in 1972 or 1973. Beecham's disposable douche, first sold in 1974, consisted of a flexible plastic bottle containing enough liquid for one application. The user would unscrew the cover, screw on a plastic nozzle, and dispense the liquid by squeezing the bottle. This bottle and nozzle had been designed and manufactured for Beecham by Monsanto. Beecham used this bottle and nozzle for approximately one year. Then it began using the bottle made by the "blow/fill/seal machine," which eliminated the need for screw on caps that had to be manually screwed on at the plant after the bottles and had been made and filled and eliminated the need to inventory plastic bottles prior to their being used in the filling process. This is virtually the same bottle shown in the patent. (Both Beecham and Aid Pack use the same blow/fill/seal machine to make their bottles.) Beecham continued to use the same nozzles that it had been using.

Basically, Beecham argues that its product does not infringe the patent because the manner in which the seal is formed between the nozzle and bottle is different from what was patented. Aid Pack's response is that Beecham's product is a functional equivalent of its own and thus violates the patent under the doctrine of equivalents, and in the case of those claims that are stated in "means plus function" language, under 35 U.S.C. § 112, which provides, in part, "An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."

### III.

The patent contains eleven claims, and Aid Pack asserts that claims 1 and 5–10 are being infringed. Of those claims, 1, 6 and 10 are independent. Claim 5 is dependent on 1, and 7–9 are dependent on 6. Therefore, if Beecham is not infringing claim 1, it can not be infringing claim 5, and if it is not infringing claim 6, it can not be infringing claims 7–9. The main focus of the parties' dispute is on claim 1 which describes the bottle and nozzle combination and focuses on the method of sealing. The other focus is on claims 6 and 10 which are very similar in language and which focus on the snap-fit method of attaching the nozzle to the bottle. Claim 1, parsed into "elements," follows:

Element 1: a fluid containing plastic squeeze bottle having an integrally formed cover;

Element 2: a nozzle attachment having an integrally formed means for removably interlocking said nozzle to said cover;

Element 3: said cover having a dome with an opening formed therein by twisting off an integral twist off member along an annularly shaped thin section in said dome;

Element 4: said dome comprising a cantilever section and an integral annular depending skirt about its outer periphery;

Element 5: said opening being formed in the center of said cantilever section and defined solely by the thickness of said thin section;

Element 6: said skirt having a thickness greater than the thickness of said cantilever section whereby said cantilever section may be reflected in the direction of the axis of said skirt;

Element 7: said nozzle attachment having means defining a downwardly depending internal annular ring engaging said cantilever section in a fluid tight seal about the periphery of said opening;

Element 8: and a passage extending through the nozzle attachment terminating at one end in a plurality of portals and at the other end in an opening with the annular ring disposed adjacent to and concentric with the opening in the nozzle attachment;

Element 9: the openings in the said nozzle attachment and dome being of comparable size;

Element 10: and the cantilever section extending a sufficient distance to define the opening in the dome.

Beecham asserts that its product does not embody elements 2, 7 and 9 of claim 1 and that therefore its product does not infringe claims 1 and 5. Specifically, it argues that its nozzle does not use an "interlocking," namely, snap-on method of attachment; its descending ring on the inside of the nozzle does not "engage" the dome "about the periphery," or the perimeter, of the hole in the dome; and its openings in the nozzle and at the top of the bottle are not "of comparable size."

Claims 6 and 10 contain the following elements which Beecham asserts its product does not:

an annular collar integrally formed on the neck and spaced from the container [see 15 in figure 3 above];

a pipe adapted to be sealingly snap-fitted onto the exterior surface of said head after said plug is severed from said head.

Specifically, Beecham argues that its bottles do not have annular collars and its nozzles do not snap on.

Aid Pack disagrees with Beecham's definition of the scope of the terms and phrases "interlock," "snap-fit," "engage about the periphery" and "comparable size." It argues that Beecham's bottles and nozzles fall within the patent because they are functionally equivalent to those covered by the patent. It claims to be entitled to the application of not only the doctrine of equivalents but to 35 U.S.C. § 112 insofar as its claims describe "means" for achieving certain functions.

## A. Literal Infringement

 To determine whether an accused device literally infringes a patent, it is necessary to compare the accused device to the language of the claims. *Martin*, 755 F.2d at 1567. There is no literal infringement unless *every element* of a patent claim is embodied in the accused device. *Builders Concrete*, 757 F.2d at 257. Where the parties do not dispute the construction of either the patented or accused devices, and where extrinsic evidence is not needed to determine the meaning of the terms in the claim, literal infringement can be determined on motion for summary judgment. *Id.; McGill*, 736 F.2d at 671. To interpret the claim and determine its scope, a court is not limited to the language of the claim but should consult "the other parts of the patent instrument and ... the circumstances surrounding the inception of the patent application." *Autogiro*, 384 F.2d at 397. In other words, the claims should be construed in connection with the "specification" (the part of the patent that precedes the claims and includes the abstract, background, summary, objects, and descriptions of the drawings), as well as the "prosecution history" and prior art. *Id.* at 397–99; *ACS Hosp. Sys. Inc. v. Montefiore Hosp.*, 732 F.2d 1572, 1577 (Fed.Cir.1984).

Here, the parties do not dispute how the accused and patented devices are constructed. Extrinsic evidence is not needed to determine the meaning of terms in the claims because the specification and prosecution history inform the Court as to the meaning of those terms and estop Aid Pack from arguing for certain interpretations of those terms. Even Aid Pack's invocation of the "means plus function" doctrine, 35 U.S.C. § 112, does not raise a factual issue requiring a factfinder, because, as a matter of law, the range of equivalents can not be as broad as Aid Pack argues.

 Claim 1, and thus claim 5, contain three elements that are missing from Beecham's product: (1) "an integrally formed means for removably interlocking said nozzle to said cover," (i.e., a nozzle which snaps onto the bottle); (2) "nozzle attach-

ment having means defining a downwardly depending internal annular ring engaging said cantilever section in a fluid tight seal about the periphery of said opening," (i.e., a sealing ring inside the nozzle which contacts the bottle near the hole in the dome of the bottle); and (3) "the openings in the said nozzle attachment and dome being of comparable size." As the illustrations above show, Beecham's bottle has a nozzle that screws on rather than snaps; its nozzle's sealing ring contacts the bottle near the edge of the bottle; and the hole in its nozzle is approximately three times the size of the hole in the dome. Claim 6, and thus claims 7 through 9, as well as 10, are also not being literally infringed. Both claims 6 and 10 focus on the snap-fit of the nozzle to the bottle, describing the collar on the bottle which sticks out (see 15 of figure 3 above) and over which the recess or cut-out in the nozzle 35, adapted to receive shoulder 15, snaps on. Beecham's product does not literally infringe these claims because (1) it does not snap on; and (2) it has no collar or shoulder over which the nozzle mates. Beecham's product uses a traditional screw-on method of attachment.

▆▆ Aid Pack's arguments that (1) "interlock" covers screw-on as well as snap-on nozzles and (2) the terms "about the periphery" and "comparable size" are broad enough to cover Beecham's design are untenable as a matter of law. The specification, prior art, and prosecution history reveal that Beecham's product, with its traditional method of attaching the nozzle and creating a seal, is not included in the Aid Pack patent.

*Specification.* In the "Abstract" section of the patent, D'Alessandro himself describes the invention: "The cover and top snap-fit into a corresponding recess within one end of a separate nozzle. The nozzle recess is provided with an annular flange adapted to engage the cantilevered top of the bottle cover to form a fluid impervious seal." In the "Background" section, he explains the deficiencies of the previously available douches that his invention was designed to overcome: the currently avail-

able douches "must be carefully assembled by the user in order to avoid inadvertent leakage which will occur if the nozzle is not securely screwed by the collar to the bottle. Such leakage can readily occur as a result of careless assembly or loosening during use." Clearly, the snap-fit method of attachment is a prominent feature of the '663 patent.

Five of the seven specific "Objects of the Invention" have to do with the improved seal D'Alessandro's design would create:

to provide a fluid containing blow molded bottle having an integrally formed cover that snaps into a mating recess in a nozzle;

to provide an improved blow-molded squeeze bottle design [sic] for use as a fluid dispensing media in conjunction with an interlocking nozzle in which the locking mechanism between the cover of the bottle and the mating recess in the nozzle is provided with a self sealing gasket like seal;

to provide an improved sealing means for a bottle and nozzle of the type herein described, wherein an annular sealing ring integrally formed with the nozzle is pressured into a more effective fluid seal by the exertion of pressure on the bottle when the bottle is in use;

to provide an improved sealing means for a bottle and nozzle of the type herein described in which a cantilevered cover maintained in normal tension relation with an annular gasket-like ring at the nozzle cover interface provides a fluid impervious seal;

to provide an improved interlock for securing a nozzle to the cover of a blow molded bottle in such a manner as to effect an improved seal there between.

The "Summary of the Invention" section describes the "preferred embodiment" of the invention:

The nozzle is formed with a basically cylindrical recess that closely contacts the cover. The side wall of the recess is formed with a U-shaped annular cutout that engages a similarly shaped shoulder on the cover, while the closed end of the

recess is hemispherically shaped and formed with a donut-shaped annular gasket that extends from the recess and makes contact with the cantilevered dome-like top of the cover. When the bottle is squeezed the increased pressure from the contained liquid due to the decreased volume deforms the cantilevered top and the annular gasket thereby improving the seal between bottle and nozzle.

Again, the snap-on method of attachment and improved seal created by a sealing ring in the nozzle that contacts the flexible dome near its opening are emphasized.

The description of the drawings includes the following description of figure 3 reproduced above, and it emphasizes these same features that are absent from Beecham's product:

> The top of the cover 16 has a dome-like configuration.... [D]ome 16 tapers from a comparatively thick wall at its base, dome support 23, to a relatively thin wall at 22 surrounding bottle opening 21. Because of this tapered construction and the cantilevered support provided at wall 23, the top surface of dome 16 is easily deformed....

> When nozzle is snapped onto cover, cut-out 35 engages shoulder 15 while ring 36 is pressured into contact with dome 16....

> This integral arrangement thus provides a tight seal when the nozzle is secured to the open bottle. When the bottle is squeezed to eject the fluid through bottle opening 21 and into the nozzle opening 31, the pressure of the hand-squeeze verti-flexes or presses the cantilever dome 16 into increased pressure engagement with the annular ring 36 thereby improving the effectiveness of the seal when the unit is in use.

*Prosecution History.* D'Alessandro, on behalf of Aid Pack's predecessor, filed a Disclosure Document with the PTO on January 31, 1973 covering a "disposable blow molded douche." It states that "[t]he top of the bottle will also be formed to accommodate existing applicator tips having female threads." (Robinson affidavit, exh. 23) Obviously, this refers to screw-on nozzles. Although technically not a part of the "file wrapper," this Disclosure Document is relevant to interpreting D'Alessandro's subsequent patent application filed nine months later. In that patent application, he chose not to pursue the screw top design. The specification makes no mention of a screw-on design and, as shown above, repeatedly uses words like "snap-fit" and "interlock." Every illustration shows a snap-on nozzle. The problems arising from screw-on nozzles, which could "loosen" during use, were noted and allegedly were being improved upon by D'Alessandro's invention.

*Prior Art.* Although it is said that a patent should be construed liberally, this "liberality ... must be directed toward supporting the statutory presumption of validity that attaches to every patent (35 U.S.C. § 282)." *Dominion Magnesium Ltd. v. United States,* 320 F.2d 388, 394, 162 Ct.Cl. 240 (1963). A patent will not be valid if it overlaps a prior patent. 35 U.S.C. § 102.

Prior art patents disclose screw-on closures for plastic squeeze bottles wherein a descending ring is adjacent to the neck of the bottle, as in the Beecham product. (Williams 1965, Bright 1966, Roberson 1965, Wetherall 1971; Robinson affidavit, exhs. 10, 16, 17 & 18). Furthermore, in 1966, the United States Supreme Court held that a patent for a screw-on top with a sealing ring over the neck was void for obviousness in light of a 1953 patent obtained by Livingston. *Graham v. John Deere Co.,* 383 U.S. 1, 32–37, 86 S.Ct. 684, 701–703, 15 L.Ed.2d 545 (1966). Finally, the prior art discloses snap-on tops for all types of bottles with sealing rings over the necks of the bottles. (Darlington 1956; Robinson affidavit, exh. 9) (referenced in the D'Alessandro patent). In light of these patents obtained prior to D'Alessandro's, it is not possible to construe D'Alessandro's patent as covering screw-on tops with sealing rings over the edge of the bottles without concluding that D'Alessandro's patent

is void. Therefore, as a matter of law, in order to avoid voiding D'Alessandro's patent, it may not be held to include Beecham's product.

## B. *Infringement by Equivalency*

 *Doctrine of Equivalency.* Aid Pack argues that Beecham's product, even if it does not literally infringe the claims, is a functional equivalent of the patented device and thus infringes by performing substantially the same function in substantially the same way for substantially the same purpose. *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 607–08, 70 S.Ct. 854, 855–56, 94 L.Ed. 1097 (1950). This argument does not raise a genuine issue of material fact because Aid Pack is estopped from arguing that its patent covers screw-on as well as snap-on nozzles or that it covers sealing methods wherein the ring engages the neck of the bottle rather than the flexible dome. *See Builders Concrete*, 757 F.2d at 258 (need not decide factual issue of equivalence if prosecution history estoppel precludes finding of infringement). Under the doctrine of prosecution history estoppel, what Aid Pack surrendered in order to obtain the patent may not now be resurrected. *Hughes Aircraft*, 717 F.2d at 1362.

First, D'Alessandro presented and then abandoned a claim during prosecution that would have covered a blow/fill/seal bottle with a screw-on nozzle. Claim 10 in an "Amendment" filed September 27, 1974, was broadly worded: "nozzle adapted to be secured to the cover." (Robinson affidavit, exh. 1, p. 22) The PTO rejected claim 10 based on prior art: "Claims 7–10 are rejected under 35 U.S.C. § 103 as unpatentable over Darlington[4] in view of Klygis[5]. Modifying the Darlington structure so that the container opening is formed in the manner

taught by Klygis would be obvious to one ordinarily skilled in the art." (Robinson affidavit, exh. 1, p. 27, footnotes added) In an amendment dated July 24, 1975, D'Alessandro cancelled claim 10. (Robinson affidavit, exh. 1, p. 31) This surrender of an unspecified means of securing the nozzle to the cover estops Aid Pack from claiming now that its claim language such as "snap-fit" and "interlock" should be given a broad construction which would include screw-on. This court, like the Federal Circuit in *Prodyne Enterprises, Inc. v. Julie Pomerantz Inc.*, 743 F.2d 1581, 1583 (Fed. Cir.1984), declines to "undertake the 'speculative inquiry' as to the necessity of the claim limitation in receiving a patent grant." It is satisfied that a claim covering screw-on as well as snap-on methods of attachment was surrendered in order to avoid a finding of obviousness based on the Darlington and Klygis patents. *See Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 871 (Fed.Cir.1985).

 Second, D'Alessandro made certain arguments to the PTO during the prosecution of his patent application that estop him now from asserting that the patent covers bottles like Beecham's where the sealing ring engages the bottle over the bottle's edge and the hole in the dome is much smaller than the hole in the nozzle. *See Hughes Aircraft*, 717 F.2d at 1362 (prosecution history estoppel applies to arguments made to examiner to obtain patent as well as to claim amendments made to overcome rejections based on prior art). After repeated rejections based on prior art, especially the patents of Darlington and Colombo,[6] D'Alessandro added the language that now appears in claim 1 (the descending ring is "adjacent to" the nozzle opening and the openings in the nozzle and dome are of "comparable size"). D'Ales-

---

**4.** The Darlington patent is for a snap-on closure for all types of containers with a sealing ring over the neck of the container (Robinson affidavit, exh. 9).

**5.** The Klygis patent is for a flexible container with an integrally formed top designed to be

snipped off and then screwed on to reseal the container (Robinson's second affidavit, exh. 4).

**6.** The Colombo patent was for a blown bottle of flexible plastics which sealed at the edge of the bottle (Robinson affidavit, exh. 15).

sandro provided the examiner with the following sketch distinguishing the prior art combination of Darlington and Colombo from his own.

$$a = 1\frac{1}{2}''$$
$$b = 1''$$

PRIOR ART COMBINATION

$$a = 1\frac{5}{8}''$$
$$b = \frac{7}{16}''$$

PRESENT APPLICATION

The prior art combination shows a sealing ring that engages near the periphery of the bottle and holes in the nozzle and bottle not of comparable size—just like Beecham's product. D'Alessandro wrote to the PTO: "The Colombo patent clearly has a lip that extends only a very slight distance inwardly as depicted in Fig. 5. It is noted that this structure is for receiving a conventional crown cap which seals not only at the lip 14 but also about the entire collar 11.... [I]n the prior art combination because the lip taught by Colombo extends only a very slight distance, there is no substantial force that urges the lip into contact with the nozzle." (Robinson affidavit, exh. 1, pp. 45–46)

Because of the surrendered claim and arguments to the PTO concerning the prior art combination of Darlington and Colombo, Aid Pack is estopped from arguing that its patent covers bottles and nozzles like Beecham's.

■ *"Means Plus Function,"* 35 U.S.C. § 112. Aid Pack argues that two of the three elements of claim 1 that are in dispute are "means plus function" elements that cover not only the elements in the form described in the specification but also in their functionally equivalent form. First, element 2 of claim 1 refers to the nozzle having an "integrally formed means for removably interlocking" the nozzle to the cover. Aid Pack argues that element 2

refers to means for connecting the nozzle to the cover, and the functional words are "for removably interlocking." While the preferred embodiment in the drawings is a snap-on means, screw-on is equivalent to snap-on. For support, Aid Pack relies on (1) D'Alessandro's statement in his affidavit that the screw-on arrangement is functionally equivalent to the snap-on; (2) a 1973 Disclosure Statement to the PTO which shows a screw-on arrangement; and (3) Pritchard's (Beecham's Technical Services Director) "admission" that they are functional equivalents.

Element 2 does not refer openendedly and in the abstract to a means for "attaching" the nozzle to the cover. It refers to a means for "interlocking" the nozzle to the cover. Section 112 directs that a means plus function claim covers "the corresponding structure ... described in the specification and equivalents thereof." The specification must be consulted to determine the range of equivalents permissible under section 112. *Lockheed Aircraft Corp. v. United States*, 553 F.2d 69, 80, 213 Ct.Cl. 395 (1977). The specification clearly describes snap-on arrangements only. In fact, in the specification, D'Alessandro criticizes the currently available products which use screw-on nozzles because they may "loosen" during use. His snap-on nozzle was to be an improvement because it "locked" the nozzle to the bottle and provided a fluid impervious seal. Thus, the section 112 range of equivalents is not broad enough, as a matter of law, to encompass Beecham's screw-on nozzle.

Aid Pack itself, after discussing the differences between the "doctrine of equivalency" and section 112's "means plus function" equivalence, states that reviewing the file history of the '663 patent is helpful in determining the scope of the coverage of the section 112 element. Memorandum in Opposition to Defendant's Motion for Summary Judgment, p. 15. As explained in more depth above, the prosecution history discloses that Aid Pack's patent does not cover screw-on arrangements. Furthermore, Aid Pack may not, under the umbrella of section 112, claim as patented all methods of attaching nozzles to bottles. Otherwise, Aid Pack would be granted rights in standard methods of attachments known since at least 1905 (when Van Eyck patented a lid for jars with a descending ring on the periphery of the lid that makes contact with the rim of the throat of the jar when screwed on; Robinson affidavit, exh. 8) and in the context of plastic squeeze bottles since at least 1965 (when Williams patented a pouring spout closure which could be punctured so as to dispense the contents with a sealing ring or flange over the lip of the container; Robinson affidavit, exh. 10).

Second, element 7 of claim 1 refers to "means defining a downwardly depending internal annular ring engaging said cantilever section in a fluid tight seal about the periphery of said opening." The express function, according to Aid Pack, is to provide a "fluid tight seal about the periphery of the opening." Aid Pack argues that if a means is provided to effect this function, it is covered by the patent. But the claim can not be construed as covering every means for making a fluid tight seal. As explained in more detail above, the patent does not cover the standard sort of seal Beecham uses that is formed on the *periphery of the bottle* and that has been around for years. Its prosecution history makes clear it was meant only to cover the method of sealing whereby the ring engages the bottle near the hole on the flexible dome.

## SUMMARY AND CONCLUSION

Beecham's product does not literally infringe claims 1 and 5 through 10 because it uses a screw-on method of attachment; the descending ring in the nozzle engages the bottle over the bottle's edge; and the holes in the nozzle and bottle are not of comparable size. The Beecham bottle does not infringe by equivalency (either under the doctrine of equivalents or the "means plus function" test) because the patent's claims may not be construed to include screw-on attachments with sealing rings over the edge of the bottle. The specification belies

such a broad reading of the claims, the prosecution history reveals that D'Alessandro specifically surrendered such a broad reading, and the prior art discloses that Beecham's method was well known and thus unpatentable by D'Alessandro.

Therefore, Beecham's motion for summary judgment is granted.

SO ORDERED.