824 F.2d 977
 Unpublished disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
WALLACE COMPUTER SERVICES, INC., formerly Wallace Business
Forms, Inc., Plaintiff-Appellee,
v.
UARCO INCORPORATED, Defendant-Appellant.
 Appeal No. 86-1695.
 United States Court of Appeals, Federal Circuit.
 April 24, 1987.
 
 Before MARKEY, Chief Judge, and RICH and NIES, Circuit Judges.
 RICH, Circuit Judge.
 
 DECISION
 
 1
 The judgment of the United States District Court for the Northern District of Illinois, Eastern Division, in favor of appellee, Wallace Business Forms, Inc. (Wallace), holding that claims 1-3 of patent No. 4,109,936 titled "Method of Producing Forms Suitable for Airline Ticketing" issued to Steidinger and assigned to Wallace are not invalid or unenforceable and that appellant Uarco, Inc. (Uarco) infringed claims 1 and 3 by making the "tugboat" ticket, is affirmed.
 
 OPINION
 Validity
 
 2
 Under 35 USC 282, a patent is presumed valid, and the party attacking validity has the burden of proving invalidity by clear and convincing evidence. See, e.g., American Hoist & Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 1360, 220 USPQ 763, 770 (Fed.Cir.), cert. denied, 469 U.S. 821 (1984). Although this burden remains on the challenger, it may be more easily met where the challenger produces prior art that is more relevant than that considered by the Patent and Trademark Office (PTO). See Connell v. Sears, Roebuck & Co., 722 F.2d 1542, 1549, 220 USPQ 193, 199 (Fed.Cir.1983).
 
 
 3
 Uarco relies on Steidinger's prior patent No. 3,339,827 (the '827 patent) in challenging the validity of the patent in suit. The district court, however, found that the '827 patent had no "advantage" for the purpose of determining obviousness not also present in the patent to Bovier, No. 2,046,544.
 
 
 4
 Uarco argues that only the '827 patent shows the combination of wide plies with control punched margins and narrow plies with register openings between the margins. This argument is misplaced. The method of claim 1 does not simply call for "register openings." It specifies that the "webs" or plies must also be "simultaneously advanced with [the] register openings positively aligned." The specification in particular describes the use of pin belts to engage the openings and thus advance the plies in positive alignment.
 
 
 5
 Fig. 6 of the '827 patent shows a mailer with register openings in the bottom and narrow intermediate plies, but not in the top ply. The district court concluded that because the '827 mailer did not have openings in the top ply, the plies could not be simultaneously advanced with the register openings positively aligned. Or as we understand it, it could not be made using pin belts for positive alignment because the pins would puncture the top ply.
 
 
 6
 Thus, we agree with the district court that the '827 patent was no more relevant to the claimed method than the Bovier patent for determining patentability. Bovier, like the '827 patent, discloses a "sandwich" zig-zag folded form with narrow intermediate plies. While Bovier addresses the problem of alignment, the district court found that it too does not provide register openings for maintaining all plies in positive alignment as the webs are advanced.
 
 
 7
 In deciding the validity of the patent in suit under Sec. 103, the district court adequately set forth the Graham inquiries into the scope and content of the prior art (under "Elements of the Prior Art") and the differences between the prior art and the claimed invention (under "Validity of the Patent-in-Suit"). Graham v. John Deere Co., 383 U.S. 1, 17, 148 USPQ 459, 467 (1966). The district court further determined that the level of ordinary skill in the art was that of someone "involved in the creation and manufacture of business forms and use of those forms in the airline industry." Finally, the court considered other objective evidence of unobviousness, including commercial success of the "sandwich" ticket.
 
 
 8
 The court concluded that the claimed invention would not have been obvious, and we agree. The fact that the individual steps were known did not make the claimed combination of steps obvious, particularly in light of the unpredicted advantages regarding "tenting."
 
 
 9
 Uarco points out that the district court made several factual errors regarding the number of plies in and zig-zag folding of the '827 mailer. Because these errors concern facts which are not essential to the conclusion of unobviousness, and the district court otherwise arrived at the correct conclusion, the errors are harmless. See Gardner v. TEC Systems, Inc., 725 F.2d 1338, 1345, 220 USPQ 777, 782 (Fed.Cir.), cert. denied, 469 U.S. 830 (1984).
 
 Inequitable Conduct
 
 10
 Inequitable conduct, which renders a patent unenforceable, requires proof by clear and convincing evidence of both a threshold degree of materiality of the nondisclosed or false information and a threshold intent. See J.P. Stevens & Co. v. Lex Tex Ltd., 747 F.2d 1553, 1559-60, 223 USPQ 1089, 1092 (Fed.Cir.1984), cert. denied, 106 S.Ct. 73 (1985). The district court's opinion on inequitable conduct is generally unclear, but what we glean from it is that the court considered the '827 patent to be cumulative of the other art before the PTO. It states in relevant part that "all elements present in the '827 patent were also present, indeed in more advanced forms, in other prior art."
 
 
 11
 The thrust of Uarco's argument to this court is contrary to this finding--that the '827 patent was more material than the references considered by the PTO. Uarco contends that certain claims of the grandparent and parent applications for the patent in suit were anticipated by the '827 patent as well.
 
 
 12
 Nondisclosed prior art is not material, however, where it would have been material only to abandoned claims cancelled earlier in the prosecution after being rejected as unpatentable by the examiner for reasons not involving the uncited prior art. Kimberly-Clark Corp. v. Johnson & Johnson, 745 F.2d 1437, 1457, 223 USPQ 603, 617 (Fed.Cir.1984). Furthermore, we have already expressed our agreement with the district court's finding that the '827 patent was no more relevant than Bovier. Since the '827 patent would have been merely cumulative of the other art considered by the examiner, Uarco has failed to establish that the threshold level of materiality was met, even under the inclusive standard of 37 CFR 1.56(a). See Litton Indus. Prods., Inc. v. Solid State Sys. Corp., 755 F.2d 158, 167, 225 USPQ 34, 40 (Fed.Cir.1985). Accord Orthopedic Equip. Co. v. All Orthopedic Appliances, Inc., 707 F.2d 1376, 1383, 217 USPQ 1281, 1286 (Fed.Cir.1983); Environmental Designs, Ltd. v. Union Oil Co., 713 F.2d 693, 698, 218 USPQ 865, 870 (Fed.Cir.1983), cert. denied, 464 U.S. 1043 (1984). Given this lack of materiality, we need not consider the district court's finding on intent.
 
 Infringement
 
 13
 The district court found that Uarco's method of making the so-called "tugboat" tickets infringed claims 1 and 3 of the patent in suit, if not literally, then under the doctrine of equivalents. Uarco does not argue that the steps of its tugboat process are not in fact equivalent, but rather that the district court ignored the patent's prosecution history which precludes infringement in this case.
 
 
 14
 The prosecution history shows that the limitation of slitting "simultaneously along continuous transverse lines" was intended to distinguish over the prior art Brenn patent, No. 2,169,994. The essential teaching of Brenn is an intermittent cut in the interleaved carbon plies which provide a thumb and finger-gripping tab to remove the carbons from the multiple-ply form.
 
 
 15
 Instead of slitting the forms between the margins, the tugboat ticket has two small perforation ties remaining in the top and bottom plies. The intermediate plies are severed by a combination of punching holes and cutting. Thus, the tugboat ticket also provides an intermittent cut, but not for the reason in Brenn. It is for the same reason as the patent in suit--to permit later separation and relieve stress at the fold caused by "tenting." We read nothing in the applicant's remarks regarding Brenn that would preclude Wallace from claiming infringement in this case.
 
 
 16
 As to the placement of the register openings "generally in said adhering areas," the district court found that Uarco's process literally met that claim limitation. The court interpreted this claim limitation to mean that the openings must at least be in the waste stub portion of the ticket. Uarco disagrees and refers to a statement in the prosecution history that indicates that the openings are "between the line of cross-perforation and the cross-slit." This is misleading. Read in context, this statement was made in reference to one of the patent drawings to identify the location of the openings, and not to further limit the claim in the way Uarco suggests.
 
 
 17
 Finally, we do not agree that the district court improperly treated the claims as general guidelines. The references to "patentable essence" and "critical steps" were largely gratuitous in view of the fact that the court also found each step of the claimed method or its equivalent present in Uarco's process. We review judgments, not opinions, see, e.g., Chore-Time Equip., Inc. v. Cumberland Corp., 713 F.2d 774, 781, 218 USPQ 673, 677 (Fed.Cir.1983), and any error in the court's infringement analysis did not affect what was otherwise a correct result.