**ENGELHARD INDUSTRIES, INC.,**
Appellant in No. 16231,

v.

**SEL-REX CORPORATION,**
Appellant in No. 16230.

**Nos. 16230, 16231.**

United States Court of Appeals
Third Circuit.

Argued May 25, 1967.

Decided Sept. 28, 1967.

Richard Whiting, Davis, Hoxie, Faithfull & Hapgood, New York City (Wallace D. Newcomb, Paul & Paul, Philadelphia, Pa., George E. Faithfull, Stanley L. Amberg, Douglas E. Whitney, Herbert Burstein, New York City, on the brief), for Sel-Rex Corp.

Rogert T. McLean, McLean, Morton & Boustead, New York City (Meyner & Wiley, G. Douglas Hofe, Jr., Samuel Kahn, Newark, N. J., J. Boustead, New York City, on the brief), for Engelhard Industries, Inc.

Before McLAUGHLIN, KALODNER and FREEDMAN, Circuit Judges.

## OPINION OF THE COURT

FREEDMAN, Circuit Judge.

Plaintiff sought a declaratory judgment [1] that defendant's patent No. 3,104,212 is invalid and was not infringed. Defendant counterclaimed for damages and an injunction for infringement. The district court entered judgment for plaintiff. 253 F.Supp. 832 (Dist.N.J.1966), supplemental opinion, 255 F.Supp. 620 (1966).

The district court's finding that defendant's patent was invalid for want of novelty under 35 U.S.C. § 102 because it was fully anticipated by a British patent issued in 1857 to one Cowper, is alone sufficient to justify the judgment. We therefore find it unnecessary to deal with the other important issues which the district court considered,—whether file wrapper estoppel barred defendant's assertion of its patent rights, whether defendant failed to comply with 35 U.S.C. § 112, requiring the patent to set forth the "best mode" of carrying out the invention, whether defendant's patent was rendered invalid under 35 U.S.C. §§ 184, 185, because defendant prematurely filed foreign patent applications, and whether defendant's patent had been anticipated by a number of earlier patents.

Defendant's patent consists of a process for electroplating gold and of a solution, or electrolyte, used in the process. The patented process involves the combination of either potassium gold cyanide or sodium gold cyanide [2] with a weak, stable organic acid, such as citric acid,[3] which has been partially neutralized with ammonium or alkali hydroxide. The process, which defendant marketed under the name "Temperex", is used in industrial electroplating, particularly in electronic circuitry.

The Cowper patent consisted of the combination of gold chloride with potassium cyanide to form what it designated as the "double cyanide of gold and potassium" to which was added tartaric acid. After the resulting precipitate of tartrate or bitartrate was filtered off there remained a solution ready for use as an electrolyte in plating gold. The Cowper solution is similar to that specified in an example and claim of defendant's patent,[4] except that in the Cowper solution there is present a chloride ion and there is no provision for a metal tartrate additive to control the acidity of the solution. The presence of the chloride ion concededly is without significance. Cowper apparently used gold chloride because potassium gold cyanide was not commercially available in his time; indeed, the purpose of the first

---

[1] 28 U.S.C. §§ 2201, 2202.

[2] The patent specified "gold as a cyanide" but the listed compounds are concededly the only ones used commercially which fit the description of the patent.

[3] The patent's list of examples includes formic, acetic, citric, tartaric, lactic, and kojic acids.

[4] Example 3 specifies:
"An electrolytic bath is made by dissolving the following components:

|  | G./liter |
| --- | --- |
| Tartaric acid and sodium tartrate | 80 |
| Gold (as potassium gold cyanide) | 8 |
| Water | Remainder |

The pH of the bath is adjusted to 3–6 by addition of more acid or alkali. The deposit obtained from this bath under conditions such as specified in Example 1 [polished steel or other metal material to be plated, temperature about 70° F., current density 10 amperes per square foot] is ductile, corrosion-resistant, and uniformly yellow in color. The fineness of the deposit is 24 karat."

Claim Number 7 is for: "An electrolyte for depositing smooth ductile gold coatings consisting essentially of 10–50 g./liter of tartaric acid partially neutralized with alkali to provide a pH of 3–6, and 1–30 g./liter of gold added as a gold cyanide.

step in his process was simply to produce potassium gold cyanide. The absence of a metal tartrate additive in Cowper's process also is without significance because in his solution the alkali potassium gold cyanide is the first ingredient used, and the organic acid is added only in an amount sufficient to make the final solution of approximately the same acidity as the "Temperex" bath. Moreover, the principal asserted purpose of the tartrate is to adjust the acidity to the level reached in Cowper's process without the additive. By following the teaching of the Cowper patent in the inter partes test plaintiff was able to produce a smooth, ductile plate from a solution which had approximately the same acidity as that which is specified in defendant's patent.

Defendant argues, however, that the compound produced under the Cowper patent would be auric potassium gold cyanide and that this differs substantially from the aurous potassium gold cyanide used in its process. Auric gold cyanide, because of the nature of the electrochemical bond between the gold and the other constituents of the compound, requires three times the electrical power to cause a like weight of gold to disassociate from the solution and to be deposited on the material to be plated than does aurous potassium gold cyanide. In addition, auric potassium gold cyanide is stable at any level of acidity, whereas aurous potassium gold cyanide is stable only within the range prescribed by defendant's patent. Defendant claims that before its patent was issued, it was believed that the aurous compound was unstable and would decompose in any acid solution. Defendant's discovery was made more important by the fact that aurous potassium gold cyanide was commercially available and its auric counterpart was not.

Plaintiff claimed, however, that the solution in the Cowper patent also was an aurous compound. This dispute between the parties occasioned much testimony by expert witnesses, references to learned treatises, and inter partes tests whose results were presented to the district court. The district court, with the conflicting evidence before it, held that the Cowper patent completely anticipated defendant's patent, thus inherently rejecting the position which defendant took on this issue. We cannot say that it clearly erred in doing so. Since the Cowper patent anticipated defendant's patent the decision of the district court that defendant's patent was invalid and not infringed by plaintiff must stand.

The judgment of the district court will be affirmed.