John C. Mabbach, J.
This is a motion to dismiss defendants’ first and second affirmative defense and counterclaim in an action for misappropriation of trade secrets, unfair competition and breach of contract. Defendant Martin C. Rosansky had been employed by plaintiff in its program to develop a lithium battery. The research and development work was conducted in secrecy and all employees connected with it were required to sign employment agreements in which they agreed to maintain and hold in confidence the information and trade secrets to which they would be exposed. Defendant Rosansky resigned from plaintiff’s employ in February, 1970, to join defendant, Power Conversion, Inc. (PCI), which had just been incorporated by defendant Bruce Jagid. PCI manufactures lithium batteries, which plaintiff claims bear a striking resemblance to those made by plaintiff during its research and development work. Plaintiff never actually manufactured and marketed lithium batteries because it did not at that time — March, 1970 —believe that a commercially viable process had been perfected. However, during the research and development program, spanning a period of five years, plaintiff obtained several patents on inventions related to various aspects of a lithium battery.
To the charge of misappropriation of plaintiff’s trade secrets, defendants have asserted three affirmative defenses, only two of which are subject of this motion. The gravamen of these defenses is that plaintiff, in seeking these patents, misrepresented facts to the United States Patent Office and thus obtained the patents by fraud. It is also alleged that plaintiff has asserted to PCI’s customers that PCI’s lithium batteries infringe on plaintiff’s patents and proprietary information, knowing the patents to be invalid and unenforceable. This alleged conduct is pleaded as an equitable defense of unclean hands barring plaintiff’s requested relief.
That branch of the motion seeking to strike the first and second affirmative defenses is denied.
It is well established that the doctrine of unclean hands is only available when the conduct relied on is directly related to the subject matter in jurisdiction and the party seeking to invoke the doctrine was injured by the conduct. (National Distillers *215 & Chem. Corp. v. Seyopp Corp., 17 N Y 2d 12, 15; Weiss v Mayflower Doughnut Corp., 1 N Y 2d 310, 316.)
Misconduct in obtaining a patent constitutes a recognized defense to a charge of patent infringement (Keystone Co. v. Excavator Co., 290 U. S. 240), but that is not the claim asserted here. In Emery Co. v. Marcan Prods. Corp. (389 F. 2d 11, cert, den. 393 U. S. 835), it was stated (supra, p. 18) that the defense of unclean hands arising out of conduct in obtaining patents “ does not apply with equal force to the claim of misappropriation of trade secrets which * # * is to a large degree a ‘ separate matter ’ ”. This holding is reiterated as a general principle by a leading authority in the field (4 Callmann, Unfair Competition Trademarks and Monopolies [3d ed.], § 87.1 [b], [3], p. 54). No New York authority exactly on point has been found although the cases of Extrin Foods v. Leighton (202 Misc. 592, 602-603), and Rabinowitz & Co. v. Dasher (82 N. Y. S. 2d 431, 441-442), are nearly so to the extent that in both cases the defenses alleged (misrepresentation in violation of Federal Food, Drug and Cosmetic Act in Extrin Foods and monopoly in violation of the Clayton Act in Rabinowitz & Co.) were held to be unrelated to the alleged misappropriation of trade secrets and thus no bar to recovery.
To determine the relationship of plaintiff’s alleged conduct before the Patent Office to the trade secret protection sought in this action, a few basic rules applicable to patent practice must be appreciated.
The basic premise underlying our patent system is that the public awards the patentee a 17-year patent monopoly in consideration for a full and complete disclosure by the patentee of the best mode for carrying out his invention. Thus, at the end of the monopoly period, the public will be free and able to practice and use the invention without further tribute (1 Walker on Patents [Deller’s ed., 1964], § 6, p. 40; 69 C. J. S., Patents, § 5).
This requirement for a full disclosure of the best mode known to an applicant at the time he files his application is embodied in section 112 of title 35 of the United States Code. Failing a frank and complete disclosure of the best mode, the patent is invalid. (Engelhard Ind. v. Sel-Rex Corp., 253 F. Supp. 832, affd. 384 F. 2d 877.)
The burden of fair dealing imposed on one who solicits patents from the Patent Office, with the opportunities for misconduct attendant to ex parte proceedings, has been stated by the Supreme Court as follows (Precision Co. v. Automotive Co., 324 U. S. 806, 818): ‘ ‘ Those who have applications pending with *216 the Patent Office or who are parties to Patent Office proceedings have an uncompromising duty to report to it all facts concerning possible fraud or inequitableness underlying the applications in issue. Cf. Crites, Inc. v. Prudential Co., 322 U. S. 408, 415. This duty is not excused by reasonable doubts as to the sufficiency of the proof of the inequitable conduct nor by resort to independent legal advice. Public interest demands that all facts relevant to such matters be submitted formally or informally to the Patent Office, which can then pass upon the sufficiency of the evidence. Only in this way can that agency act to safeguard the public in the first instance against fraudulent patent monopolies. Only in that way can the Patent Office and the public escape from being classed among the ‘ mute and helpless victims of deception and fraud. ’ Hazel-Atlas Glass Co. v. Hartford-Empire Co. ’ ’ (322 U. S. 238, 246; see also Scott Paper Co. v. Fort Howard Paper Co., 432 F. 2d 1198, cert. den. 401 TJ. S. 913).
Assuming these principles are followed in practice, the grant of a patent vitiates the trade secret cloak of protection (Bickley v. Frutchey Bean Co., 173 F. Supp. 516, and cases cited therein). In Newport Ind. v. Crosby Naval Stores (139 F. 2d 611, 612), the court explained: “ A process that is a secret cannot be one that is patented; because full disclosure, so that the public may know how to use it when the patent expires, is the consideration for the monopoly given the patentee for a limited time.”
Assuming the defendants’ allegations in the first and second affirmative defenses to be true, as indeed must be done on this CPLE 3211 (subd. [b]) motion (4 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3211.46) and applying the above principles, the conclusion is inescapable that there would be no trade secrets to misappropriate and thus no cause of action for misappropriation. The remedy in such a situation would lie in a patent infringement action, assuming, of course, the patents were still in effect. Thus, it cannot be stated carte blanche that there is no direct relationship in this instance between the alleged conduct before the Patent Office and the claimed trade secrets. A fortiori the opposite must be true. And if the allegations in the affirmative defenses are proven, it might very well be that a trial court" would reach the conclusion that it would be inequitable to permit plaintiff the protection of a trade secret that it would have had to relinquish had its procedures before' the Patent Office been in accord with the law. So held the Supreme Court of Michigan in Dow Chem. Co. v. American Bromine Co. (210 Mich. 262).
Plaintiff’s reliance upon Emery Co. v. Marcan Prods. Corp. (389 F. 2d 11, supra) is not persuasive. In Emery, the trial court, *217 after hearing the evidence, found that the alleged misconduct before the Patent Office was only remotely related, if at all, to the breach of the trade secret trust. The Second Circuit Court of Appeals, in affirming, held that the trial court’s conclusion was not an abuse of discretion but at the same time noted that “ the record would have supported the trial judge if he had reached a contrary conclusion ’ ’. This language certainly weakens Emery as authority for a general principle that Patent Office misconduct is wholly unrelated to a trade secret claim as seems to be suggested in Callmann, Unfair Competition Trademarks and Monopolies (supra). Manifestly, such a proposition cannot be applied as a matter of law so as to require a dismissal of the affirmative defenses. Inasmuch as defendants’ pleading alleges that this conduct before the Patent Office and subsequent activities of plaintiff have caused injury to the defendants, the pleading is sufficient on its face under the liberalized pleading provisions of CPLR 3013 (Foley v. D’Agostino, 21 A D 2d 60; 3 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3013.03).
Plaintiff has also moved to dismiss the counterclaim for failure to state a cause of action under section 340 of the General Business Law, popularly known as the 1 ‘ Donnelly Act ’ ’, claiming that the allegations fail to assert that the acts complained of were committed by plaintiff pursuant to a contract, agreement, arrangement or combination with others for the purpose of restraining trade to the injury of defendants.
The counterclaim is captioned “ Counterclaim for Unfair Competition and Violation of' the Antitrust Laws ”. The allegations repeat those contained in the affirmative defenses discussed above, recite in general the history of the plaintiff’s efforts with respect to lithium batteries, and allege that after defendants’ successful efforts in production of lithium batteries, plaintiff sought to enter into arrangements “with others” whereby it would receive money in exchange for permitting “ said others ” to compete in the lithium battery market. The counterclaim further alleges that plaintiff has sought, together with “ others ”, to monopolize the manufacture and sale of lithium batteries by forcing defendants to discontinue manufacture and sale of such batteries. It also asserts that plaintiff has represented to defendants’ customers that PCI’s batteries infringe upon plaintiff’s patents, although knowing that these patents are invalid, and that plaintiff has informed defendants’ customers that PCI has misappropriated plaintiff’s proprietary information when it knew said information was in the public domain and that defendants were free to use it. The counter *218 claim concludes with the allegation that such acts are in violation of section'340 of the General Business Law, and are acts of unfair competition.
Although plaintiff’s challenge to the counterclaim is principally directed at the failure to state a cause of action under section 340, there is passing reference to the unfair competition allegations on the same grounds. The latter challenge is without merit (Zenie v. Miskend, 245 App. Div. 634, affd. 270 N. Y. 636; 60 N. Y. Jur., Trademarks, Tradenames and Unfair Competition, § 128).
In respect to section 340 of the General Business Law, plaintiff’s position requires closer analysis. Absent an allegation that, the acts complained of were done pursuant to a contract, agreement, arrangement or combination, a pleading fails to state a cause based on alleged violation of section 340 of the General Business Law (McGraw Elec. Co. v. Lockyer, 267 App. Div. 897, 898; American Broadcasting-Paramount Theatres v. Hazel Bishop, Inc., 31 Misc 2d 1056, 1060; Famous Beers v. Piel Bros., 60 N. Y. S. 2d 884, 885). Plaintiff argues that the act requires some action with others (Matter of AFA Protective Systems v. Crouchley, 63 Misc 2d 695, 697), and the counterclaim alleges only individual activities. Plaintiff also argues that defendants admit plaintiff is not a competitor of defendants, and in the absence of such competition there can be no violation of the Donnelly Act (Light Corrugated Box Corp. v. Southern Kraft Corp., 20 N. Y. S. 2d 66). Although the counterclaim speaks of arrangements and combinations, those allegations are only to the effect that plaintiff “ sought ” to enter into such arrangements or “ sought ” to combine. On the whole, the allegations must be characterized as pleading only unilateral actions by the plaintiff. However, there is authority for a liberal approach to the issue on a motion to dismiss (Columbia Gas of N. Y. v. New York Elec. & Gas Corp., 28 N Y 2d 117), which would sanction a denial of the motion in this instance.
In Columbia Gas, plaintiff commenced a declaratory judgment action seeking to have it determined, inter alia, that agreements that defendant was offering to prospective customers were in violation of section 340 of the General Business Law. Defendant moved to dismiss the complaint. The Court of Appeals found (supra, pp. 127-128) that-although defendant’s practice “ bears a superficial resemblance to a tying arrangement which, by inhibiting competition in the market place, is unreasonable and illegal ”, it could not actually be deemed such. Nevertheless, the Court of Appeals upheld the complaint, stating: “ But the mere *219 fact that the challenged practice may not be deemed a tie-in does not automatically immunize it from attack under the Donnelly Act. Even though the defendant’s promotional activity is not illegal as a matter of law, it may still be unlawful if it can be shown to have actually restrained competition. (Cf. United States v. Griffith, 334 U. S. 100, 107 et seq.) Therefore, despite our reservations concerning the sufficiency of the second cause of action, we are reluctant to foreclose the plaintiff from an opportunity of factually demonstrating illegality in a comprehensive rule of reason inquiry (see, e.g., Standard Oil Co. v. United States, 283 U. S. 163, 179; Chicago Bd. of Trade v. United States, 246 U. S. 231, 238-239), especially since there will, in any event, be a trial on the merits of the first cause of action. Since, then, it does no violence to the plaintiff’s pleading to permit proof at the trial of possible anticompetitive effects, if any, of the defendant’s promotional plan, the motion to strike the second count of the complaint was properly denied.” (supra, pp. 128-129).
But the outcome on this motion need not be predicated on this basis alone. Defendants point out that, subsequent to serving their answer, they learned that plaintiff had entered into an exclusive patent licensing agreement with P. J. Mallory Co., one of the country’s major battery manufacturers and vendors. The existence and terms of the agreement are not disputed. Although the mere fact that plaintiff entered into a patent licensing agreement is not per se a violation of any restraint of trade provision (Good v. Daland, 121 N. Y. 1; Remington Rand v. International Business Machs. Corp., 167 Misc. 108), the limited monopoly granted to a patent owner does not exempt him from the antitrust statutes (United States v. Imperial Chem. Ind., 105 F. Supp. 215; United States v. General Elec. Co., 80 F. Supp. 989; United States v. Ethyl Gasoline Corp., 27 F. Supp. 959, affd. 309 U. S. 436).
Accordingly, in a given set of facts based upon such agreements, the courts of this State have found a violation of the Sherman Act in creating a monopoly and restraint of trade and, therefore, a violation of the Donnelly Act. (Remington Rand v. International Business Machs. Corp., supra, and cases cited therein; see, also, Niash Refining Co. v. Avedon Mfg. Corp., 15 Misc 2d 870.)
More significantly, defendants have alleged that plaintiff’s patents were fraudulently obtained because plaintiff failed to fully disclose a complete description of the alleged inventions and the best mode of practicing each such purported invention *220 to the Patent Office. In Walker, Inc. v. Food Mach. (382 U. S. 172), the United States Supreme Court held that proof that a patent was obtained by a knowing and willful misrepresentation of facts to the Patent Office would be sufficient to strip the patentee of its exemption from the antitrust laws. The Supreme Court in so holding reinstated Walker’s counterclaim which had been summarily dismissed by the trial court without hearing evidence. This holding has been applied in a number of subsequent cases, one of which involved plaintiff herein (American Cyanamid Co. v. Federal Trade Comm., 363 F. 2d 757, app. after remand, sub nom. Pfizer & Co. v. Federal Trade Comm., 401 F. 2d 574, cert. den. 394 U. S. 920).
In view of these controlling authorities, there is little doubt that a cause of action exists which must withstand the attack of this motion to dismiss. However, in denying the motion, the court deems it necessary, in a matter as complicated as this, for the sake of clarity and ease of disposition in further proceedings, that the defendants amend their answer so as to separately state and number the cause of action for unfair competition and that under section 340 of the General Business Law, in their counterclaim, and, in so amending, the pleading should make reference to the exclusive licensing agreement referred to above.