**REFAC INTERNATIONAL LTD., Plaintiff,**

v.

**IBM, et al., Defendants.**

**Civ. A. No. 85–2020.**

United States District Court, D. New Jersey.

July 1, 1988.

Richard T. Laughlin, Judson A. Parsons, Jr., Laughlin, Markensohn, Lagani & Pegg, P.C., Morristown, N.J., Philip Sperber, President, Refac Intern. Ltd., New York City, for plaintiff.

D. Peter Hochberg, D. Peter Hochberg Co., L.P.A., Cleveland, Ohio, Roy H. Wepner, Lerner, David, Littenberg, Krumholz & Mentlik, Westfield, N.J., for Diebold, Inc.

Harold E. Meier, Gardere & Wynne, Dallas, Tex., John B. Lavecchia, Michael P. Murphy, Connell, Foley & Geiser, Roseland, N.J., for Olivetti USA, Inc. (Docutel).

Alan J. Hruska, Edward Hayum, Cravath, Swaine & Moore, New York City, Edward A. Zunz, Jr., Peter McDonough, Riker, Danzig, Scherer, Hyland & Perretti, Morristown, N.J., for IBM Corp.

Jonathan A. Marshall, Frank E. Morris, Maria McCormack, Pennie & Edmonds, New York City, Edward Dauber, Greenberg, Dauber & Epstein, Newark, N.J., for Manufacturers Hanover Trust Co.

Charles W. Bradley, Steven D. Glazer, Lawrence B. Goodwin, Davis Hoxie Faithfull & Hapgood, New York City, Richard D. Catenacci, John B. Lavecchia, Connell, Foley & Geiser, Roseland, N.J., for NCR Corp.

Ronald Santucci, David Kane, Kane, Dalsimer, Sullivan, Kurucz, Levy, Eisele and Richard, New York City, Roger Toner, Kuttner, Toner & DiBenedetto, Roseland, N.J., for Fujitsu.

Susan Lesinski, Dorsey & Whitney, New York City, for A.O. Smith Corp.

Robert C. Kahrl, Jones, Day, Reavis & Pogue, Cleveland, Ohio, Roger A. Lowenstein, Dickson, Creighton & Lowenstein, P.A., Hoboken, N.J., for TRW.

1. § 112 Specification

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most clearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

A claim may be written in independent or, if the nature of the case admits, in dependent or multiple dependent form.

Subject to the following paragraph, a claim in dependent form shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed. A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers.

## AMENDED OPINION

POLITAN, District Judge.

This case comes before this Court on a motion for summary judgment by the defendants, IBM et al. They allege that the patent at issue, the Cook patent # 3,612,687, is invalid because it fails to comply with 35 U.S.C. § 112[1], and 35 U.S.C. § 101–103. Additionally, defendants claim unenforceability of both the Cook and Nissman (patent # 3,609,690) patents, on the grounds that both patents fail to particularly point out and distinctly claim what the inventors regard as their invention.[2] Defendants also allege that the Cook patent should fail because it does not set forth the "best mode"; that there was anticipation of the Cook patent; and finally, that both the Cook and Nissman patents were procured by inequitable means.

For the reasons stated below, this Court grants summary judgment in favor of the defendants, holding the Cook patent invalid on its face under 35 U.S.C. § 112 for lack of adequate description which "particularly" points out the subject matter of the claim, and for failure to set forth the "best mode".

### Background of the Case

This action was commenced by Refac International Ltd. (Refac) on April 29, 1985.

A claim in multiple dependent form shall contain a reference, in the alternative only, to more than one claim previously set forth and then specify a further limitation of the subject matter claimed. A multiple dependent claim shall not serve as a basis for any other multiple dependent claim. A multiple dependent claim shall be construed to incorporate by reference all the limitations of the particular claim in relation to which it is being considered.

An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

2. Claims against all defendants as related to the Nissman patent were dismissed with prejudice pursuant to F.R.C.P. 41. Thus, the issues raised by the parties concerning the Nissman patent are moot and the opinion, as rendered, will deal exclusively with the Cook patent.

Refac owns the patent at issue by agreement with Holobeam, Inc., a company owned by Mr. Cook, the patentee. Holobeam owns a 40% stake in the outcome of this litigation.

The patent in suit concerns a design for comparing a secret code word known by a cardholder with information encoded on a credit card thereby giving the cardholder access to credit or cash. The secret code word is assigned to the cardholder when the card is issued to him. (See Figure 1 below.) In the patent application, a four character code word is used. (16)

## Figure 1

The card is encoded using a process of passing light through a fiber optic bundle, formed by weaving a plurality of fibers in a "random" fashion, and imprinting a pattern of black dots on the card itself. The imprinting process is illustrated in Figure 2 below.

# Figure 2

Light passes from the source 38 through a mask 28 to the fiber optic bundle 20. The mask 28 is divided into four quadrants, marked 1, 2, 3 and 4, and each quadrant is divided into four sections marked a, b, c and d. The quadrants of the mask correspond to the four characters on the card. Each quadrant has three opaque sections and one transparent section, *e.g.*, 30, 32, 34 and 36. The sections which are transparent will ultimately be translated into different characters. For example, in the illustration, the code word will be a, b, c and d. According to the patent, in a four character code word, 256 code words would be available to be assigned to customers.

Once a card has been received, the holder may use it at any location where there is a card reader. (See Figure 3 below). The cardholder hands his card (10) to a clerk who inserts it into the card reader. Once inserted, optic fibers in the card reader convey the light and dark spots on the card to a display. (50) At the same time, the cardholder tells the clerk his code word, and the clerk dials the code word in by rotating wheels of the card reader, 72, 74, 76 and 78. Light from source (98) passes through lens (100) and four transparencies (88) on each of the wheels, to present a light/dark pattern of squares on the mirror (96). This pattern is similarly sensed by 16 optic fibers, to produce a light-dark display in display blocks (92). If the patterns in blocks 50 and 92 match, the cardholder is verified as the owner and cash is given or credit is extended.

Figure 3

The issue involved in this litigation is the process used for encoding the card. The patent specifies that the card is encoded in a "random" manner. There are, however, two methods for generating random numbers, random with replacement and random without replacement. This is the precise issue upon which plaintiff's patent is either upheld or invalidated.

The difference between the two systems requires a brief explanation. Imagine a hat filled with marbles, each marble having imprinted on its face one number, and each marble in the hat having a different number. In a *random with replacement system,* a marble would be picked, its number noted, and then the marble would be replaced, to possibly be drawn again. This method would be repeated until the desired quantity of numbers had been picked. In a *random without replacement system,* a marble, once picked, would not be returned to the hat. Each pick would be discrete and a different number would be picked each time. (In a random with replacement system, there exists the possibility that the same number would be picked over and over because the marble is replaced after every pick.) Once the desired number of marbles had been chosen, the amount of marbles remaining in the hat would be the original number decreased by the number of picks.

The application of the random systems described above to the patent *sub judice* is that the patent asserts that the card is encoded in a "random" fashion. The plaintiff alleges that the system presented is random with replacement because otherwise the "system would be no system at all." The defendants assert that the system as presented is not clear, and therefore it must fail for lack of particularity and failure to specify the best mode as required under § 112. As proof of their contention, the parties look both to the patent application, and the conflicting testimony of Mr. Cook. Additionally, plaintiff's rely on the affidavit of a Dr. Hammer.

*Standard for Review*

■ Summary judgment is granted when there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c). A Court uses a single set of principles in deciding whether to grant summary judgment; "the rules do not change simply because the case involves patent law". *Aid Pack Inc. v. Beecham Inc.,* 641 F.Supp. 692, 694 (D.Mass.,1986), *aff'd,* 826 F.2d 1071 (Fed.Cir.1987). Although most suits involving patent invalidity involve such complex factual issues that they are unsuitable for summary judgment, there are some cases that do lend themselves to summary judgment. *Chore-time Equipment Inc. v. Cumberland Corp.,* 713 F.2d 774, 778 (Fed.Cir.1983). Issues of fact are not created simply by or through the use of expert opinion, and therefore, expert opinion does not, in itself, bar the use of summary judgment. *Lyle/Carlstrom Assoc. v. Manhattan Store Industries,* 635 F.Supp. 1371 (E.D.N.Y.1986), *aff'd.,* 824 F.2d 977 (Fed.Cir.1987). Claim construction, likewise, does not preclude the granting of a summary judgment, as it is generally considered an issue of law rather than one of fact. *Molinaro v. Fannon/Courier Corp.,* 745 F.2d 651, 654 (Fed.Cir.1984).

In the case at bar, this Court is convinced that there is nothing in the subject matter before it that cannot be decided from a reading of the patent and the deposition testimony. Therefore, after a careful consideration of everything presented and the issues involved in this case, this Court rules that summary judgment is an appropriate remedy.

*35 U.S.C. § 112*

35 U.S.C § 112 contains the specific requirements for a written description in a patent application. The patent application must contain "the manner and process of making and using" the invention "in such full, clear, concise and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, *to make and use* the same, and shall set forth *the best mode* contemplated by the inventor of carrying out his invention". (Emphasis added). This Court holds that the Cook patent does not meet these requirements because nei-

ther the actual invention nor the best mode is adequately described in the patent specification.

*"Skilled in the Art"*

■ While § 112 specifies that a person "skilled in the art" may be used to interpret how to make or use the patent, the section does not require the use of experts to explain every patent application. Rather, the burden is on the Court to ascertain whether it needs "expert testimony or other extrinsic evidence to explain ... the application of complicated patent descriptions to the subject matter of the patent." *Messing v. Quiltmaster Corp.*, 159 F.Supp. 181, 184 (D.N.J.1958).

■ This Court holds that the interpretation of patent claims only requires an expert when the subject matter becomes sufficiently complex so that the Court does not feel competent to interpret what is before it. Obviously, in a case where the subject matter involves chemical, mathematical, physical, electrical processes or the like, the Court must be guided by one "skilled in the art" in order to determine whether the invention may be used or made from the patent specification itself. *In re Ruschig*, 379 F.2d 990, 54 CCPA 1551 (1967); *Struthers Patent Corp. v. Nestle Corp., Inc.*, 558 F.Supp. 747, 785 (D.N.J.1981).

■ On the other hand, when the subject matter is not deemed complex and is easily understandable without expert aid, and the words used can be interpreted in their ordinary, everyday sense, the Court is not bound to require or accept expert testimony. In these instances, expert testimony is of little help. *Struthers Patent Corp.* at 785. *Johnson v. Riener*, 302 F.2d 757, 49 CCPA 1096 (1962). *C–Thru Products v. Uniflex*, 397 F.2d 952 (2d Cir.1968).

The requirement for experts can be seen as being on a continuum; in the case at bar, because the patent sets forth a system, the basis of which can be understood by this Court, the use of such expert testimony is not required and the Court on its own, based upon a fundamental understanding of the English language, is competent to interpret the patent before it.

■ This Court finds that the testimony of experts should be limited to the use specified in 35 U.S.C. § 112, to explain the making and use of the patent. Experts may not be used to speculate as to what an invention might be, or to what use it might be put. *Application of Winkhaus*, 527 F.2d 637, 188 U.S.P.Q. 129 (1975). Nor may an expert be used as a lexicographer to define ordinary terms in an unordinary manner which have been utilized in a patent specification.

In the case at bar, the plaintiff has attempted to pass off his expert witness, a cryptologist, as a lexicographer. A cryptologist is one who scientifically studies the "enciphering and deciphering of messages". He is not supposed to ascertain which of several possible meanings a word may hold, when that word has not been defined by either the inventor, the description, or the specifications accompanying the patent application. He may aid the Court in explaining the process or in interpreting the invention, but he cannot *rework* the words to *create* the invention. The invention stands or falls on the words used by the inventor.

The plaintiff's expert, Dr. Hammer, testified that the plaintiff's system encompassed a random with replacement system. However, he arrived at this conclusion after he had extrapolated from the system presented by the plaintiff in his application. Dr. Hammer appears to have ignored what the patent stated and instead, looked at the patent as if he were deciphering a code; *i.e.*, he looked for a hidden invention and did not consider the invention that was described. As admitted in the plaintiff's own brief, Dr. Hammer speculated about the process that could have been, (P.Mem. p. 10) rather than accepting the system as presented.

For example, Dr. Hammer relied on Figure 2 as definitively showing a random with replacement system. However, Figure 2 does not show any connections of multiple fibers to a single card location. Additionally, the specification gives examples wherein the number of fibers are defined as 100, and not the 400 to 600 that

Dr. Hammer stated. (Col. 2, lines 73–74). Finally, the specification states that the number of locations is equal to the number of fibers. Moreover, as admitted by counsel for plaintiffs at oral argument, the examples in the patent reflect a random without replacement system.[3] This last point is illustrated in the examples giving six locations for six fibers and one million locations for one million fibers. (Col. 3, lines 31–33).

■ The patent stands or falls on what is said, not what the holder of the patent hoped he said, nor what an expert speculates in hindsight about what the patent holder might have meant. Words mean what they mean and not what we want them to mean. In summary then, this Court finds unpersuasive the speculative testimony of Dr. Hammer, and confines the use of his testimony to the explanation of what actually is in the patent and not what might be read into the application. The examples given in the patent are clear on their face, and show a system utilizing a random without replacement process. The meaning given to the patent by Dr. Hammer is at variance with the patent's clear language. As such, this Court will rely upon the plain clear language of the patent.

*Enablement*

■ This Court is deemed capable of interpreting the patent before it. In so doing, the Court must look to both the written description as well as the drawings which accompany the application. In order to be adequate, a description must be sufficiently narrow. An invention described in terms that are too broad is an invention that describes not the invention but the goals of the inventor. *In re Wilder*, 736 F.2d 1516 (Fed.Cir.1984), *cert. denied*, 469 U.S. 1209, 105 S.Ct. 1173, 84 L.Ed.2d 323 (1985). A court cannot, if the description is not clear on its face, presume the necessary motivation on the part of the reader to duplicate the invention by trial and error. *In re Ruschig*, 379 F.2d 990, 54 CCPA 1551 (1962); *Application of Wolfensperger*, 302

F.2d 950, 49 CCPA 1075 (1962). If a patent is silent about a particular specification, the normal inference is that either it is immaterial or not claimed because it is not novel. *Permutit v. Graver*, 284 U.S. 52, 52 S.Ct. 53, 76 L.Ed. 163 (1931).

■ Under § 112, patent claims are required to be definite so that the public will know what they are prohibited from doing during the term of the patent, and what they are to have at the end of the patent term. *Merrill v. Yeomans*, 94 U.S. (4 Otto) 568, 24 L.Ed. 235 (1877); *Walker on Patents*, Vol. 6, 21:18 (3rd Ed. 1987). If the scope of the subject matter embraced by the claim is clear in accordance with the concepts of common grammar rules, and if the applicant has not otherwise indicated that he intends the claim to have a different scope, then the claim is to be read as presented. *In re Hyatt*, 708 F.2d 712, 714 (Fed.Cir.1983). Claims may not be broadened by the specifications, nor by hindsight. Indeed,

> Some persons seem to suppose that a claim in a patent is like a nose of wax which may be turned and twisted in any direction, by merely referring to the specification, so as to make it include something more than, or something different from what its words, express. [However], The claim is a statutory requirement, prescribed for the very purpose of making the patentee define precisely what his invention is.

*White v. Dunbar*, 119 U.S. 47, 51, 7 S.Ct. 72, 74, 30 L.Ed. 303 (1886).

■ Claim construction is a question of law and the mere existence of a dispute as to that legal issue does not preclude summary judgment. *Howes v. Medical Components, Inc.*, 814 F.2d 638 (Fed.Cir. 1987). In interpreting a claim, the testimony of the inventor is important but he is required to properly interpret his patent and not invent what might have been. *Durango Assoc. v. Reflange, Inc.*, 843 F.2d 1349, 6 U.S.P.Q.2d, 1290 (Fed.Cir.1988). Resort must be made to the patent itself

---

**3.** See: col. 2, lines 6–20;
col. 2, lines 57–59; 66–75;
col. 3, lines 29–40;
col. 5, lines 49–58.

for a final determination of what is claimed. *Loctite Corp v. Ultraseal Ltd.*, 781 F.2d 861, 867 (Fed.Cir.1985).

 Applying these principles to the case at bar, it is clear on the basis of a total review of the record that the description of the patent contained in the application sub-judice does not define what is meant by the word "random". Rather, the reader of the patent is directed to the examples used by the patentee to describe how the patent works. Those examples are admittedly crystal clear and Mr. Cook (the inventor) admitted in his deposition testimony that the patent nowhere alleges that a random with replacement system is used. This Court finds that the examples given in the patent are obvious in that they do not utilize a random with replacement system. Rather, both the description and the drawings accompanying the application refer to a random without replacement invention.

The attempt by the plaintiff in his deposition to assert that a random with replacement system was utilized in the patent was based on his contention that the examples in the patent were not his invention but were, instead, merely illustrative of the concepts he was trying to promote. Nowhere, however, in the patent application, nor in the specifications, nor in the claims, does Mr. Cook make clear that he had narrowed his invention to be a random with replacement system and that the examples given were not examples of his supposed system. Rather, he testified that the system as set forth in the application was an invention of his lawyers and that due to monetary constraints, he filed the application even though he knew the application was imprecise. However, what was said is what was said—no more, no less. This Court will not stray from the written words of the patent to a jungle of hyperbole.

Further, this Court rejects plaintiff's argument that Figure 2 illustrates a random with replacement system. Drawings in a patent application are illustrative of the system claimed in the patent. Ambiguous portions of drawings cannot be relied on to support a patent claim when these same claims are not sufficiently described in the patent specification itself. In the case at bar, it is not clear that the "spaghetti" of Figure 2 is meant to show a system of random with replacement. Rather, to this Court, Figure 2 merely illustrates the system of multiple intertwining of the fiber optic fibers, and the requirements for specific locations for individual characters.

This Court is convinced that the patent claimed and illustrated is a random without replacement system. Both the patentee and the expert engaged by the plaintiff have engaged in litigational hindsight. The contradictory testimony of the expert is based on post-facto speculation as to a system that the inventor might have invented. The contradictory testimony of the patentee is based on self-proclaimed mistakes that were made in the application itself. This Court finds totally unpersuasive the attempt by the plaintiff to read into the patent that which is not there, and thereby holds that the requirements of 35 U.S.C. § 112 to provide a full and clear description are not met.

*Best Mode*

 A patentee is required under § 112 to disclose the "best mode contemplated by the inventor of carrying out his invention". 35 U.S.C.A. § 112, ¶ 1; *W.L. Gore & Assoc. v. Garlock*, 721 F.2d 1540, 1556 (Fed.Cir.1983), *cert. denied*, 469 U.S. 851, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984). This requirement is intertwined with the requirement for disclosure of the manner and process of making and using the invention. The essence of the best mode condition "requires the inventor to disclose the best mode *contemplated by him*, as of the time he executes the application, of carrying out his invention." *In re Gay*, 309 F.2d 769, 50 CCPA 725 (1962). *Englehard Industries Inc. v. Sel Rex Corp.*, 253 F.Supp. 832 (D.N.J.1966), *aff'd.* 384 F.2d 877 (3rd Cir.1967); *Application of Glass*, 492 F.2d 1228, 1232, 181 U.S.P.Q. 31 (1974). Even though a patent is not required to teach that which is already well-known in the art, *Spectra–Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1534 (Fed.Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 346, 98 L.Ed.2d 372 (1987), when there is a failure

to disclose the best mode, the Court must look to evidence of "concealment", whether accidental or intentional. *DeGeorge v. Bernier*, 768 F.2d 1318, 1324 (Fed.Cir.1985). If the quality of the disclosure is poor, the result may be effective concealment. *In re Sherwood*, 613 F.2d 809, 816, 204 U.S.P.Q. 537 (1980), *cert. denied*, 450 U.S. 994, 101 S.Ct. 1694, 68 L.Ed.2d 193 (1981). If the inventor knows, at the time the application is filed, of a better method to practice his invention than the one set forth in his application, the patent can be ruled invalid. *Englehard Industries, Inc. v. Sel Rex Corp.* at 837.

 There is no reason why this principle should not be applied to what is essential for carrying out the invention, as well as to the forms of the invention itself. A patentee is required to disclose the system which makes the patent run if that system is important in the disclosure of the "best mode". As in *Randomex, Inc. v. Scopus Corp.*, 849 F.2d 585, 589–90 (Fed.Cir.1988), a patentee is required to divulge the "fuel" that makes his invention run. *Randomex* involved a system which cleaned disk packs with a cleaner fluid. While the lower court held the patent invalid for failure to particularly specify the components of the fluid, the Federal Circuit reversed because it felt that disclosure of a generic type of cleaner sufficed. However, as the court held, there remains a requirement for sufficient specificity under the best mode requirement that the patentee disclose the best method that would allow one skilled in the art to utilize the claimed invention. *Id.* p. 590, n. *.

In the case at bar, the patent has failed to affirmatively disclose the best mode as testified to by the patentee. The mode revealed by the patent is a system of encoding a card using a random without replacement. However, according to Mr. Cook, this is "no system at all". Additionally, the plaintiff was aware at the time of filing that his patent application was not precise and that it did not disclose the optimal system. It is for this reason that the Court holds that the patentee has not complied with the "best mode" requirement of § 112.

In summary, then, this Court holds that defendants have sustained their burden of proof by clear and convincing evidence that the Refac patent is invalid under the requirements of 35 U.S.C. § 112 for failure to particularly point out the claimed invention and for failure to specify the best mode.

An appropriate order will be entered.