REFAC INTERNATIONAL, INC., Plaintiff,

v.

IBM CORPORATION; et al., Defendants.

Civ. A. No. 85–2020.

United States District Court, D. New Jersey.

April 12, 1989.

Richard T. Laughlin, Judson A. Parsons, Jr., Laughlin, Markensohn, Lagani & Pegg, P.C., Morristown, N.J., and Philip Sperber, President Refac Intern. Ltd., New York City, for plaintiff.

Alan J. Hruska, Edward Hayum, Cravath, Swaine & Moore, New York City, and Edward A. Zunz, Jr., Peter McDonough, Riker, Danzig, Scherer & Hyland, Morristown, N.J., for IBM Corp.

D. Peter Hochberg, D. Peter Hochberg Co., L.P.A., Cleveland, Ohio, and Roy H. Wepner, Lerner, David, Littenberg, Krumholz & Mentlik, Westfield, N.J., for Diebold, Inc.

Harold E. Meier, Gardere & Wynne, Dallas, Tex., and John B. Lavecchia, Richard D. Cantanacci, Liza M. Walsh, Connell, Fo-

ley & Geiser, Roseland, N.J., for Olivetti U.S.A., Inc. (Docutel).

Charles W. Bradley, Steven D. Glazer, Lawrence B. Goodwin, Davis Hoxie Faithfull & Hapgood, New York City, and John B. Lavecchia, Richard D. Cantanacci, Liza M. Walsh, Connell, Foley & Geiser, Roseland, N.J., for NCR Corp. and Unisys Corp.

Jonathan A. Marshall, Frank E. Morris, Maria McCormack, Pennie & Edmonds, New York City, and Edward Dauber, Greenberg, Dauber & Epstein, Newark, N.J., for Manufacturers Hanover Trust Co.

POLITAN, District Judge.

This matter comes before the Court on defendants IBM, Diebold, Manufacturers Hanover Trust, Unysis, NCR and Olivetti's motion for attorneys fees pursuant to 35 U.S.C. § 285. Section 285 of the Patent Laws provides that: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." The instant motion has been bifurcated into two parts. First, the Court will rule upon the entitlement to fees. If that motion is granted, the parties will submit attorneys fees applications for the Court to determine reasonableness.[1] For the reasons outlined herein, I judge this case to be exceptional within the meaning of § 285 and will grant the entitlement to fees.

Generally, patent suits are governed by the same rules which govern other federal litigation; each party bears its own costs. Congress, however, has carved out a statutory exception to this rule embodied in 35 U.S.C. § 285. Under that statute, parties can recover reasonable attorneys fees upon a showing that the case was exceptional. Circumstances held to be exceptional as to warrant the entitlement to fees include "inequitable conduct during prosecution of a patent, misconduct during litigation, vexatious or unjustified litigation, or a frivolous suit." *Bayer Aktiengesellschaft v. Duphar International Research B.V.*, 738 F.2d 1237, 1242 (Fed.Cir.1984) (citations omitted). Moreover, cases have been considered exceptional when the patent holder continued prosecution of the action after it became apparent that the patent was invalid, *see Hughes v. Novi American, Inc.*, 724 F.2d 122, 125 (Fed.Cir.1984), or when the patent holder caused the action to be "more protracted" than it should have been. *See Ashcroft v. Paper Mate Mfg. Co.*, 434 F.2d 910, 915 (9th Cir.1970). Section 285 was designed to have a remedial effect. It was designed to act as a deterrent to the "improper bringing of clearly unwarranted suits", "to rectify, at least in part, the injustice done the defendant", and "to defend the court and the judicial process against abuse". *Mathis v. Spears*, 857 F.2d 749, 754 (Fed.Cir.1988).

Frivolousness must be measured against objective facts. *See Shelco, Inc. v. Dow Chemical Co.*, 466 F.2d 613, 618 (7th Cir.) *cert. denied*, 409 U.S. 876, 93 S.Ct. 125, 34 L.Ed.2d 129 (1972). Thus, in order to recover fees, defendants must demonstrate to this Court that Refac knew, or should have known that this suit was frivolous. Moreover, the burden of showing that the suit was frivolous, and therefore exceptional, is "clear, unequivocal and convincing" evidence, *see Reactive Metals and Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578, 1585 (Fed.Cir.1985).

There is no question in this Court's mind that Refac knew, or should have known that the instant suit was frivolous. In June 1988, I granted defendants' motion for summary judgment holding that the patent in question, the Cook patent # 3,612,687, was invalid under 35 U.S.C. § 112. My decision was based on the fact that the patent did not disclose with particularity the invention and did not set forth the "best mode". *Refac International Ltd. v. IBM*, 689 F.Supp. 422, 424 (D.N.J. 1988). The patent used the word "random". The precise issue before me was whether, in the context of the patent, random meant random *with* replacement or random *without* replacement. This was a critical distinction because the alleged in-

---

1. The amount of counsel fees contemplated by the defendants is approximately 2.5 million dollars.

fringing defendants all used a system that was random with replacement. I found, based on a reading of the patent and the accompanying diagrams that the word random could only mean random without replacement.

Despite the fact that the language and drawings of the patent dictated otherwise, plaintiff asserted throughout this litigation that the word random in the patent must mean random with replacement. Refac claims that the reason Mr. Cook did not specify random with replacement in the language of the patent was because Mr. Cook always believed the word random to mean random with replacement. That contention is clearly without merit. At the beginning of Mr. Cook's deposition, he was asked what was meant by the word random. Mr. Cook gave the classic example of a without replacement system—a person selects a numbered ball from a box, *throws that away,* and reaches in and pulls out another ball.

Moreover, the patent application submitted to the patent office clearly defined a system without replacement. The diagrams included in the application represented an invention with 100 fibers connected to 100 locations thereby depicting a one-to-one ratio which illustrated a random without replacement system. Mr. Cook, the inventor, testified that the diagrams did not illustrate "his invention" and he was going to change the application but did not do so. Mr. Cook stated that the system actually depicted, a without replacement system, was "no system at all", "ridiculous", and "an example of the prior art." Refac endorsed those positions in an attempt to show that the patent must have described something else. This is a flagrant nonsequitur. The fact that plaintiff wishes some other result does not make it so. As I said in my original decision, "[w]ords mean what they mean and not what we want them to mean." *Refac,* 689 F.Supp. at 430. Refac, to its peril, has attempted to enforce a patent which was not the one described in Mr. Cook's patent application.

In addition to the obvious frivolousness of this suit, Refac cannot claim ignorance of the weakness of the patents. Before filing the suit, Refac's president, Mr. Phillip Sperber, a patent attorney, discussed with Refac's current counsel the stratagem of picking off "a bank or some other relatively small user with the intention of settling the litigation on a paid up license basis" which could then be used as a war chest to prosecute others. In fact, some small defendants did settle this case to avoid the prospect of lengthy and expensive litigation. These settlements do not indicate to the Court the validity of the patent. Refac has a reputation for fiercely litigating matters. The smaller defendants may have merely wanted to avoid a long, drawn out proceeding. Refac's president, has written that "[i]t only makes sense to use the cost of litigation as a bargaining leverage to force a settlement on terms favorable to the party that can litigate the matter to death without worrying about the cash flow." [2] Even plaintiff's counsel stated in a letter to Mr. Sperber that the advances achieved by the patents at issue "were small".

In order to show good faith, Refac states that it consulted with Mr. Cook before filing the suit and was satisfied that the patent was valid and infringed. Refac, however, concedes that Mr. Cook is not a person skilled in the art. They also acknowledge that Mr. Cook is not a person capable of comprehending patent claims. Therefore, reliance on Mr. Cook is misplaced. Nor can plaintiff rely upon the testimony of Dr. Hammer (plaintiff's expert witness) to support its position that it was justified in bringing this suit. Dr. Hammer was not hired by plaintiff until long into this litigation, at or about the time defendants made their motions for summary judgment. Moreover, as I indicated in the summary judgment Opinion, Dr. Hammer's testimony is totally unpersuasive in the context of this case.[3]

---

**2.** Sperber, *Overlooked Negotiating Tools,* Les Nouvelles, June 1985, at 81.

**3.** The Court notes that Refac is an experienced litigator in the patent field. This is not an inexperienced patent holder trying to salvage

Refac's conduct toward specific defendants cannot go unmentioned. With respect to defendant Diebold, Inc. Refac unnecessarily contacted and harassed many of Diebold's customers some of whom were not even parties to this suit. Refac, rather than stop these practices voluntarily, had to be enjoined by Court Order.

In a last ditch attempt to demonstrate its good faith, Refac on this motion for attorneys fees, now seeks to prosecute an "alternate position" that the patent is valid as describing a without replacement theory. This however, is contrary to the position taken by Refac throughout this litigation and will not be entertained by this Court at this time. There was more than ample opportunities for Refac to raise this claim before and during the summary judgment proceedings as well as on reargument. Refac submitted not less than five lengthy briefs and an equal number of detailed certifications on those motions. Moreover, Refac has argued time and time again that the defendants utilize a with replacement system. Based upon the record in this case, it would be incongruous for this Court to even consider plaintiff's 180 degree shift in position. However, even assuming the patent is valid under a without replacement theory this assumption dramatically supports the assessment of counsel fees in this case. These defendants have not infringed that system and should not have had to defend this suit.

In a supplemental submission to the Court dated March 31, 1989, plaintiff makes an informal motion to strike all references to other cases in which Refac is a party. This Court agrees with plaintiff that references to other Refac matters are not relevant to the instant motion. Defendants have cited to the Court many other Refac matters pending in this court as well as other federal courts. While defendants may feel that the quantity of suits is somehow indicative of less than good faith motives, this Court disagrees. Each case must be judged on its own merits. The fact that one Refac case may have been frivolous does not mean that other Refac cases are not valid. Therefore, this Court has not, and will not rely on references to any other Refac matter in determining whether this case is exceptional.

■ Lastly, plaintiff claims that resolution of this matter requires a testimonial hearing. I am satisfied that no such hearing is necessary. Courts have decided motions for fees without a hearing. *See Nordek Corp. v. Garbe Iron Works, Inc.,* 221 U.S.P.Q. 632, 635, 1983 WL 223 (N.D.Ill. 1983). The record before me is substantial. The parties have submitted numerous briefs, certifications, affidavits and letters at every minute stage of the proceeding, including unsolicited (and in many instances, unwarranted) submissions. Extensive oral arguments have occurred. The standard for a fee award is an objective one; all that is required is to show that Refac knew, or should have known, that the case was frivolous. The record resoundingly reflects that Refac knew, or should have known that this action was frivolous. As such, I will award fees to the defendants.

For the reasons outlined in this Opinion, it is hereby

ORDERED that plaintiff's motion to strike references to other Refac suits is GRANTED; and it is further

ORDERED that defendants IBM, Diebold, Manufacturers Hanover Trust, Unysis, NCR and Olivetti's motion for attorneys fees is GRANTED. Defendants are hereby directed to file and serve appropriate affidavits of services rendered in connection with this matter within 30 days of this Opinion and Order for this Court to determine what fees shall be awarded.

---

his invention from infringing corporate giants. Rather plaintiff is a sophisticated company which, as a regular course of business, acquires rights to patents and seeks to enforce same by litigation or otherwise. Refac should have rec-

ognized before bringing this baseless suit that the invention they had acquired the rights to was not the system utilized by the defendants in this case.